## GEORGE NELSON'S CASE.

Suffolk.   November 8, 9, 1955. — January 3, 1956.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Workmen's Compensation Act*, Amount of compensation, Double employ-
ment.

One who for a year had been employed as a laborer by a contractor in-
sured under the workmen's compensation act and also had been em-
ployed by a taxi company, insured under the act, to drive a taxi us-
ually two evenings a week and occasionally at other times could prop-
erly be found to have been "employed in the concurrent service of"
both the contractor and the taxi company within the definition of
"Average weekly wages" in G. L. (Ter. Ed.) c. 152, § 1 (1), as appear-
ing in St. 1943, c. 529, § 1, and, upon his sustaining an incapacitating
injury arising out of and in the course of his work for the contractor,
was entitled to have the compensation to be paid by the contractor's
insurer determined on the basis of average weekly wages computed by
taking into consideration his earnings from the taxi company in addi-
tion to his earnings from the contractor, even though the services ren-
dered by him to the two employers, respectively, were wholly dis-
similar.

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *Dowd*, J.

*Alexander C. Eggleston*, for the insurer.

*Alphonse S. Bachorowski*, (*Charles V. Hogan* with him,)
for the claimant.

RONAN, J.   The employee on July 17, 1953, as a result of
using a seventy pound jackhammer which he held close to
his body while operating it in the performance of his work
as a laborer for a contractor, became ill and suffered a coro-
nary occlusion or a vasomotor spasm which totally incapaci-
tated him until September 2, 1953, and has since partially
disabled him from resuming arduous labor.   During the

year prior to his accident, the contractor had paid him an average weekly wage of $69.13. During this same period he was in the employ of a taxi company, driving a taxi Friday and Saturday evenings as a rule and occasionally other times during the week when the taxi company had work for a spare time driver, for which the taxi company paid him $1,014.11 or an average weekly wage of $19.50. Both the contractor and the taxi company were insured employers. The insurer of the contractor appealed from a decree based upon the average weekly wages of $88.63 as found by the Industrial Accident Board.

The only question presented is whether, in computing the average weekly wages, the amount received from the taxi company should be added to the amount received from the contractor.

Our workmen's compensation act, G. L. (Ter. Ed.) c. 152, sets up a system of money payments for the loss of earning capacity sustained by an employee by reason of injuries arising out of and in the course of his employment. The amount of compensation is based upon the average weekly wages as defined by the act. The payment of compensation according to the framers of the act was to be considered as an item of expense of production in the industry in which the injury occurred. See *Gillen's Case,* 215 Mass. 96; *Gagnon's Case,* 228 Mass. 334. Where the employee who had concurrent contracts with more than one employer to render services at different times during a week was injured in the course of performance of one of those contracts, the rate of compensation usually was not to be based upon the total earnings the employee had received from his various employers, and this was true even if all the contracts called for services similar to those which were being performed by the employee when he was injured. *King's Case,* 234 Mass. 137. *Marvin's Case,* 234 Mass. 145. *Quebec's Case,* 247 Mass. 80. *Beckford's Case,* 268 Mass. 221. It was pointed out in *Quebec's Case,* 247 Mass. 80, 83, that while our act was largely modeled on the English act (6 Edw. VII, c. 58) it did not contain as does the English act a clause

providing that "where the workman had entered into concurrent contracts of service with two or more employers under which he worked at one time for one such employer and at another time for another such employer, his average weekly earnings shall be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident." *King's Case*, 234 Mass. 137. *Marvin's Case*, 234 Mass. 145.

The definition of "Average weekly wages" as appearing in G. L. (Ter. Ed.) c. 152, § 1 (1), was amended by St. 1935, c. 332, § 1, and St. 1943, c. 529, § 1, by adding so far as now material the words, "In case the injured employee is employed in the concurrent service of more than one insured employer or self-insurer, his total earnings from the several insured employers and self-insurers shall be considered in determining his average weekly wages."

The purpose of these amendments is plain. His compensation was to be no longer computed only upon the rate of wages that he was receiving from the particular contract of employment in which he was actually engaged at the time of his injury. We think one could be found to be in the concurrent service of more than one employer where during regular periods of a week he had undertaken to perform services for more than one employer. When the employee in this case finished his work driving an automobile for the taxi company it was assumed that he would return to work at the customary hour and continue in the actual performance of his work for the taxi company during the usual periods of service as he had done for more than a year. He returned each week under the same contract, performing the services required by said contract for the wages fixed by the contract. A new contract was not required. We think that at the time he was injured he was in the employ of the contractor but that it could be found that he was also in the concurrent service of the taxi company, and that there was no error in considering the wages he had received from the latter company in determining his loss of earning ca-

pacity. *Owners of S. S. Raphael* v. *Brandy*, [1911] A. C. 413, 415. *Dewhurst* v. *Mather*, [1908] 2 K. B. 754. *Lloyd* v. *Midland Railway*, [1914] 2 K. B. 53. *Juan's Case*, 124 Maine, 123, *S. C.* 125 Maine, 361. *Brown* v. *Saltillo Borough Council*, 137 Pa. Super. Ct. 599. See *Warren's Case*, 326 Mass. 718. Compare *Cue* v. *Port of London Authority*, [1914] 3 K. B. 892, 900.

The insurer's principal contention is that the wages received from the insured and also from the taxi company should not be added to determine the earning capacity of the employee because the services rendered to the contractor were entirely dissimilar to those rendered to the taxi company. It is urged that in fixing the rate of compensation only those wages received from the same industry should be considered. The authorities on this point are not in accord. For a list of decisions on both sides of the question see *St. Paul-Mercury Indemnity Co.* v. *Idov*, 88 Ga. App. 697, S. C. 210 Ga. 256; *Fidelity Union Casualty Co.* v. *Carey*, 38 S. W. (2d) 169 (Tex. Civ. App.), *S. C.* 55 S. W. (2d) 795. See Larson, Law of Workmen's Compensation, § 60.31. In this Commonwealth we must interpret the statutory amendments already referred to defining the average weekly wages. We can only interpret those statutes. We cannot add to them a provision that they are not to apply unless the services which the employee has undertaken for others are similar to those he was performing at the time of his injury. *Thacher* v. *Secretary of the Commonwealth*, 250 Mass. 188, 190–191. *Mitchell* v. *Mitchell*, 312 Mass. 154, 161. *Boston Five Cents Savings Bank* v. *Assessors of Boston*, 317 Mass. 694, 701.

Costs of this appeal under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, as amended by St. 1949, c. 372, shall be allowed by the single justice.

*Decree affirmed.*