## ROBERT CHARTIER'S CASE.

Hampden.   September 26, 1984. — November 23, 1984.

Present: BROWN, KASS, & SMITH, JJ.

*Workmen's Compensation Act,* Amount of compensation, Concurrent employment.

An employee who had held two jobs simultaneously for a part of the twelve-month period immediately preceding a work-related injury but had quit one of those jobs before the date of the injury was not employed in "current service" within the meaning of G. L. c. 152, § 1(1), and thus was not entitled to have his average weekly earnings computed on the basis of his earnings from both jobs. [8-10]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

The case was heard by *Raymond R. Cross,* J.

The case was submitted on briefs.

*Morton J. Sweeney & Dorothy J. Della Noce* for the employee.

*J. Norman O'Connor, John D. Lanoue & J. Norman O'Connor, Jr.,* for the employer & another.

BROWN, J. This case involves interpretation of the following language in G. L. c. 152, § 1(1), as appearing in St. 1943, c. 529, § 1:

"In case the injured employee is employed in the concurrent service of more than one insured employer or self-insurer, his total earnings from the several insured employers and self-insurers shall be considered in determining his average weekly wages."

The issue before the Industrial Accident Board and before this court is whether the employee was "employed in . . . concurrent

service" where he had held two jobs simultaneously for a part of the twelve-month period immediately preceding the work related injury but held only one of those jobs on the date of the injury. The single member found that in order for an employee to be in "concurrent service" within the meaning of the statute, "the employee must be in a concurrent service relationship on the day of the injury." The reviewing board affirmed the findings and decision of the single member. Upon review in the Superior Court, judgment was entered upholding the decision of the board, and this appeal ensued. See *Haley's Case*, 356 Mass. 678, 679-680 (1970). It does not appear that the precise question raised in the present case has been addressed by our appellate courts.[1]

From November 17, 1978, to July 7, 1979, the employee worked full-time at the Belchertown State School (Belchertown). During that same period of time, the employee was employed part-time for North Atlantic Millwork Corp. (North Atlantic). After July 7, 1979, when the employee terminated his employment with Belchertown, he continued to work for North Atlantic. On October 16, 1979, the employee sustained an injury to his right knee arising out of and in the course of his employment with North Atlantic. While employed at Belchertown, the employee earned $152 per week. His average weekly wage during his employment with North Atlantic was $220.78. The duration of his employment at Belchertown constituted seven and one half months of the twelve-month period immediately prior to his industrial accident.

The single member considered only the employee's earnings at North Atlantic. Because he worked only twenty to thirty hours per week at North Atlantic while he was employed full-time at Belchertown, his average weekly wage, if calculated only on the basis of the North Atlantic employment, was neces-

---

[1] In *Nelson's Case*, 333 Mass. 401 (1956), the employee worked as a laborer for a contractor and on weekends worked as a taxi driver. The Supreme Judicial Court said that "one could be found to be in the concurrent service of more than one employer where during regular periods of a week he had undertaken to perform services for more than one employer." *Id.* at 403. See also *Robinson's Case*, 354 Mass. 282, 283 (1968); *Nowak's Case*, 2 Mass. App. Ct. 498, 499 (1974).

sarily low. The employee argues that the average weekly earnings at Belchertown must be added to the average weekly earnings at North Atlantic.[2]

The employee's contention is founded on the language in G. L. c. 152, § 1(1), that average weekly wages are to be determined by looking at the employee's earnings over the twelve months preceding the work-related injury. Since the concurrent employment provision is in the section of the statute defining average weekly wages,[3] the employee argues that it is fairer and more consistent with the statutory purpose to look at the employee's employment over the preceding twelve months to determine concurrent service, rather than to look only at the day on which the injury occurred. The employee continues that the Legislature was attempting to develop a formula which would produce an amount most closely approximating the loss of earning capacity sustained by an employee. See Locke, Workmen's Compensation § 301, at 344 (2d ed. 1981). This proposition is not without appeal since it places a premium on closely approximating the loss of earning capacity; but it lacks support in the statutory language and in the relevant case law.[4]

"The plain language of a statute is the primary indicator of its meaning." *Moynihan* v. *Arlington,* 6 Mass. App. Ct. 960, 961 (1978). Use of the present tense "is" in the statute suggests

---

[2] There were certain weeks when the employee's earnings at North Atlantic contained compensation for as many as fifty hours of work. Obviously, the employee did not work this many hours when he was working at the two jobs. To some degree, the employee would have the reviewing board determine his average weekly wage on the basis of two substantially full-time jobs.

[3] The other pertinent language in G. L. c. 152, § 1(1), on which the employee relies is:

> " 'Average weekly wages,' the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; . . ."

[4] "The purpose of the [workers' compensation] Act is to replace *wages* lost by reason of an employee's inability to work because of an injury" (emphasis supplied). *Don Francisco's Case,* 14 Mass. App. Ct. 456, 460 (1982).

quite strongly that the Legislature intended that the concurrent employment exist at the time the injury was sustained. See *Hashimi* v. *Kalil,* 388 Mass. 607, 609 (1983) ("In construing a statute, words are to be accorded their ordinary meaning and approved usage").

The employee urges that this court interpret the provision in light of the statute as a whole and its purposes. Looking at the statute as a whole, we note that "employee" is used in the definition of "[a]verage weekly wages." "Employee," in turn, is defined in the first paragraph of G. L. c. 152, § 1(4) (as appearing in St. 1947, c. 215), as "every person in the service of another under any contract of hire, express, or implied, oral or written." By the employee's own admission, he had quit his job at Belchertown and was not employed there at the time of his injury.[5] He certainly was not under "contract of hire" at Belchertown. Thus it cannot be said that at the time of the injury the claimant was an employee of more than one employer.

Additional support for the interpretation that the concurrent service must be at the time of injury can be found in § 26B of c. 152, inserted by St. 1957, c. 276. That section states, in pertinent part, that:

> "When an employee employed in the concurrent service of two or more insured employers receives a personal injury compensable under this chapter while performing a duty which is common to such employers, the liability of their insurers under this chapter shall be joint and several."

It is readily apparent that for this section to apply, an employee would have to be "in the concurrent service of two or more insured employers" at substantially the same time, as well as performing a duty which is common to each one at that time. See *Robinson's Case,* 354 Mass. 282, 286 (1968), which interprets that provision.

---

[5] As the claimant here "quit" his job at Belchertown, we are not called upon to review a situation where an employee is furloughed, discharged without good cause, or otherwise involuntarily released by one of his employers.

Although the employee's interpretation of the statute is not without superficial attraction, we conclude that, in the present circumstances, his employment with Belchertown was not "concurrent" with his employment with North Atlantic at the time of the injury.

*Judgment affirmed.*