70                                                     421 Mass. 70

Neff *v.* Commissioner of the Dep't of Industrial Accidents.

COLLEEN NEFF *vs.* COMMISSIONER OF THE DEPARTMENT OF
INDUSTRIAL ACCIDENTS.

Suffolk. December 5, 1994. - August 9, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Workers' Compensation Act*, Costs, Procedure. *Constitutional Law*, Equal
protection of laws. *Waiver. Statute*, Construction.

The Commissioner of the Department of Industrial Accidents is authorized
under G. L. c. 152, § 11A, to waive, on the ground of indigency, the
filing fee required under that statute of a party appealing a conference
order in a case involving a medical issue. [72-77] O'CONNOR, J., dis-
senting with whom LYNCH, J., joined, expressed the opinion that they
would reach the constitutional issue raised and would declare the fee
provisions constitutional.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on June 13, 1994.

The case was reported by *Greaney*, J.

*Richard A. Mulhearn* for the plaintiff.

*Thomas O. Bean*, Assistant Attorney General, for the
Commissioner of the Department of Industrial Accidents.

*William T. Salisbury*, for Massachusetts AFL-CIO Coun-
cil & another, amici curiae, submitted a brief.

LIACOS, C.J. The plaintiff, Colleen Neff, filed this action
for declaratory and injunctive relief in the county court pur-
suant to G. L. c. 231A (1994 ed.). Neff challenges on consti-
tutional grounds the validity of the impartial medical exami-
nation fee provision of G. L. c. 152, § 11A, as appearing in
St. 1991, c. 398, § 30. A single justice reserved and reported
the case to the full court without decision.

The parties agreed to the following facts. On November 2,
1993, the plaintiff filed a claim for benefits under the provi-
sions of the Workers' Compensation Act, G. L. c. 152

421 Mass. 70                                            71

Neff *v.* Commissioner of the Dep't of Industrial Accidents.

(1994 ed.) (Act). The plaintiff alleged that she had been injured in the course of her employment and she sought incapacity compensation from August 30, 1991, onward, together with medical benefits. The plaintiff's claim was denied at the conference level by an administrative judge of the Department of Industrial Accidents (department). The plaintiff filed a timely appeal of the conference order for the purpose of obtaining a de novo hearing on her claim.

Section 11A of the Act, as determined by this court's opinion in *Murphy* v. *Commissioner of the Dep't of Indus. Accidents*, 418 Mass. 165, 171 (1994) (*Murphy II*), and supplemented by regulations promulgated by the department, requires a party appealing a conference order in a case involving a medical issue to pay the department a filing fee of $350. The commissioner represents that the Legislature has not appropriated money to the department to pay for impartial medical examinations, and the plaintiff accepts this representation for the purposes of this action. The plaintiff says that she is unable to make the payment of the $350 fee because she is indigent. The commissioner accepts this representation for the purposes of this action.

The plaintiff filed with the department a motion, supported by affidavit, for waiver of the filing fee based on her indigency. The commissioner granted the plaintiff a sixty-day enlargement of time to pay the fee, but declined to waive it. The commissioner construes § 11A of the Act as not authorizing him to waive the fee and as not permitting a hearing of the plaintiff's compensation claim unless she pays the fee.

Before our decision in *Murphy* v. *Commissioner of the Dep't of Indus. Accidents*, 415 Mass. 218 (1993) (*Murphy I*), G. L. c. 152, § 11A, provided in pertinent part:

> "(2) When any claim or complaint involving a dispute over medical issues is the subject of an appeal of a conference order pursuant to section ten A, the parties shall agree upon an impartial medical examiner from the roster to examine the employee and submit such choice to the administrative judge assigned to the case within ten

calendar days of filing the appeal, or said administrative judge shall appoint such examiner from the roster. The insurer or *any claimant represented by counsel who files such appeal shall also submit a fee equal to the average weekly wage in the commonwealth at the time of the appeal to defray the cost of the medical examination under this section* within ten days of filing said appeal . . ." (emphasis added).

We held in *Murphy I, supra* at 233, that, insofar as this provision required that a claimant represented by counsel submit a fee not required of unrepresented claimants, it was unconstitutional, as a denial of the equal protection of the law. We held that such a classification violated equal protection principles because it was unsupported by any rational basis, and we remanded the case to the Superior Court for a declaratory judgment consistent with our opinion.[1] On remand, a Superior Court judge ordered that portions of the statute limiting the fee to claimants represented by counsel and setting the fee equal to the average weekly wage in the Commonwealth be struck. The remaining statutory language provided that all claimants appealing from an administrative judge's denial of workers' compensation benefits after a conference must pay a filing fee. The fee is $350, which represents the cost to the department of the required impartial medical examination. In *Murphy II, supra,* we affirmed the order of the Superior Court.

The plaintiff argues that G. L. c. 152, § 11A, after *Murphy II,* is unconstitutional as applied to her. The plaintiff contends that without a fee waiver in cases of indigency, the statute denies due process and equal protection.

This court will not answer a constitutional question unless it necessarily must be reached. *Manor v. Superintendent, Mass. Correctional Inst., Cedar Junction,* 416 Mass. 820, 824 (1994), and cases cited. Here, we are able to resolve the

---

[1] We did not consider any claims pertaining to alleged violations of Murphy's due process rights.

issue based on the statute and the intent of the Legislature. See *id.* In doing so, we "indulge every rational presumption in favor of [the statute's constitutionality]." *Commonwealth v. Lammi*, 386 Mass. 299, 301 (1982).

The commissioner refused to grant Neff's motion for a waiver of the fee required by G. L. c. 152, § 11A (2), because, in his view, that statute and the department's regulations do not provide for such a waiver for indigent persons. It is true that the statute and regulations have no express provisions for fee waivers for impartial medical examinations. We believe, however, that a reading of the entire statutory scheme for workers' compensation leads to the conclusion that the Legislature intended to confer on the commissioner the authority to grant to indigent individuals waivers of the fee required by § 11A.

What we have said regarding the government procurement statute holds true for the workers' compensation law as well: "The legislative intent is to be ascertained from the statute as a whole, giving to every section, clause and word such force and effect as are reasonably practical to the end that . . . the statute will constitute a consistent and harmonious whole, capable of producing a rational result consonant with common sense and sound judgment." *Vining Disposal Serv., Inc. v. Selectmen of Westford*, 416 Mass. 35, 38 (1993), quoting *Haines v. Town Manager of Mansfield*, 320 Mass. 140, 142 (1946). As to the Act, we have stated that "[t]he act is to be interpreted in the light of its purpose and, so far as may be, to promote the accomplishment of its beneficent design." *Young v. Duncan*, 218 Mass. 346, 349 (1914).

The Act was enacted as a "humanitarian measure" in response to strong public sentiment that the remedies afforded by actions of tort at common law did not provide adequate protection to workers. *Id.* at 349. See *Murphy I, supra* at 222. It is a remedial statute and should be given a broad interpretation, viewed in light of its purpose and to "promote the accomplishment of its beneficent design." *Young v. Duncan, supra.* See *Panasuk's Case*, 217 Mass. 589, 592 (1914).

In *Murphy I, supra* at 223-225, we described the four procedural stages of a workers' compensation dispute. First there is an initial informal conciliatory proceeding. G. L. c. 152, § 10. There appears to be no fee requirement at this stage. Next, the case is referred to the Industrial Accident Board (board) for a conference before an administrative judge of the department. G. L. c. 152, §§ 10, 10A. When a claim is referred to the board, the *insurer* must pay a fee of sixty-five per cent of the average weekly wage in the Commonwealth. G. L. c. 152, § 10 (5).

The third stage, after the conference, is a hearing before an administrative judge. G. L. c. 152, § 11. Again, there appears to be no fee requirement for proceeding to this stage of a workers' compensation dispute. There is, however, the requirement of the payment of a fee, equal to the average weekly wage in the Commonwealth (now set by the commissioner at $350), for an impartial medical examination when a medical issue is disputed. G. L. c. 152, § 11A (2). See *Murphy II, supra* at 170-171; *Murphy I, supra* at 233. After our decision in *Murphy II*, any insurer or any claimant who files for a § 11A hearing must pay this fee.

The fourth stage of a workers' compensation dispute is an appeal to the reviewing board. G. L. c. 152, § 11C. Appellants to the reviewing board must pay a filing fee equal to thirty per cent of the average weekly wage in the Commonwealth. *Id.* Section 11C expressly provides for a waiver of this fee for indigent claimants.

An appeal from a decision of the reviewing board must be filed in the Appeals Court. G. L. c. 152, § 12. A party may seek enforcement of an order of the reviewing board in the Superior Court. *Id.* In both the Appeals Court and the Superior Court, as in any court of the Commonwealth, an indigent party may request that the filing fee be waived. G. L. c. 261, §§ 27A-27G (1994 ed.).

On examination of the procedural path described above, it becomes apparent that the Legislature created a system whereby an employee either pays no fee or may have a fee waived for indigency at any point in the dispute except at the

stage when an impartial medical examination is mandated. If this examination is not obtained, the proceedings halt and the claimant's benefits are discontinued. G. L. c. 152, § 11A (2). The plaintiff could not go on to the next stage of the dispute.

The purpose of the workers' compensation act was to ensure that employees, who give up their rights to sue employers in tort, will recover lost wages and lost earnings capacity and medical expenses resulting from work-related injuries, regardless of fault or forseeability. *Murphy I, supra* at 222. The Act reflects a legislative decision to treat damages for work-related injuries as a cost of doing business. *Id.* As noted above, the fees assessed on employee-claimants are few, and, with the one exception we discuss today, may be waived in the case of indigency. The Legislature's treatment of indigent claimants in this area is consistent with the treatment of indigents in other proceedings. The State's legislative policy of fair treatment for indigents is expressed in many statutes that provide for waiver of fees for indigent claimants. See, e.g., G. L. c. 261, § 27A-27G (providing for waiver of fees and costs for indigents in any civil, criminal, or juvenile proceeding or appeal in any court); G. L. c. 231, § 60B (1994 ed.) (providing that $6,000 bond in medical malpractice cases may be reduced by single justice on finding of indigency); G. L. c. 218, § 23 (1994 ed.) (giving discretion to set bond for District Court appeals in cases of hardship); G. L. c. 211D, § 2 (1994 ed.) (Committee for Public Counsel Services to establish definition, standards, and procedures to determine "indigency").

We do not believe that the Legislature intended to force a claimant out of the workers' compensation dispute process merely because the claimant is indigent and cannot pay for an impartial medical examination, especially since an indigent claimant can apply for a fee waiver at every other stage where a fee is required. Such a result would defeat the purpose of the workers' compensation act and would be inconsistent with express provisions for fee waivers for indigency. " ' "An intention to enact a barren and ineffective provision

is not lightly to be imputed to the Legislature." *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969). See *O'Shea* v. *Holyoke*, 345 Mass. 175, 179 (1962). . . . "[T]he duty devolves upon us to give . . . [the statute] a reasonable construction." *Massachusetts Turnpike Auth.* v. *Commonwealth*, 347 Mass. 524, 528 (1964). In doing so, we should take care to construe the statute to carry out the legislative intent . . . .' (Citations omitted.) *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976)." *Commonwealth* v. *Great Atl. & Pac. Tea Co.*, 404 Mass. 476, 481 (1989).

We conclude that the Legislature intended to give the commissioner authority to grant requests for waivers of the impartial medical examination fee for indigent claimants, even those represented by attorneys. See *Murphy I, supra* at 231 (noting that disadvantaged claimants are able to hire attorneys whose fees are paid by insurers, but may be unable to pay impartial medical examination fee). Indeed, as enacted by St. 1991, c. 389, G. L. c. 152, § 11A, provided that insurers and claimants represented by attorneys were required to pay impartial medical examination fees; pro se claimants were not. This wording at least suggests a concern that pro se claimants, who are likely to be indigent, may not be able to pay and thus no fee should be required of them. "The employee in the circumstances prescribed by [the Act] is at least in misfortune, because he has received personal injuries. He may be presumed commonly to be somewhat needy." *Ahmed's Case*, 278 Mass. 180, 187 (1932). Assuming this to be the case, there was little need to include an express fee waiver provision.

The commissioner's contention that the Legislature did not show an intent to allow waivers because it did not appropriate funds to cover the costs of such examinations for indigent claimants is unpersuasive. Unfunded mandates from Legislatures, both Federal and State, are an unfortunate but common fact of life in the operation of government agencies.

We conclude that, consistent with the intent of the Legislature, the workers' compensation statute implicitly confers

on the commissioner the authority to grant waivers of the impartial medical examination fee required by G. L. c. 152, § 11A, for indigent claimants, even those represented by attorneys. Interpreting the statute in this way obviates the need for us to discuss Neff's constitutional arguments. Cf. *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 652 (1977) (constitutional question avoided because statute conferred discretion on judge to set bond amount in medical malpractice actions, thus preventing potential constitutional violation).

The case is remanded to the county court for further proceedings consistent with this opinion.

*So ordered.*

O'CONNOR, J. (dissenting, with whom Lynch, J., joins). "The commissioner construes § 11A of the Act [G. L. c. 152] as not authorizing him to waive the fee and as not permitting a hearing of the plaintiff's compensation claim unless she pays the fee." *Ante* at 71. The plaintiff, rightly, does not suggest otherwise. Instead, she challenges the validity of the fee on constitutional grounds. *Ante* at 70. Indeed, the plaintiff and the defendant commissioner jointly moved the single justice to report this case to the full court without decision, stating in the motion that "[t]he question presented in this action is whether the absence of a provision in G. L. c. 152, § 11A for waiver for indigents of the filing fee to defray the cost of the impartial medical examination required by that statute deprives [the plaintiff] of her rights to due process and equal protection under the United States Constitution and the Massachusetts Declaration of Rights." Nevertheless, the court does not address the constitutional question, stating that it is "able to resolve the issue based on the statute and the intent of the Legislature." *Ante* at 72, 73.

The court "conclude[s] that, consistent with the intent of the Legislature, the workers' compensation statute implicitly confers on the commissioner the authority to grant waivers of the impartial medical examination fee required by G. L.

c. 152, § 11A, for indigent claimants, even those repre-
sented by attorneys." *Ante* at 76, 77. The court's message is
that, although the statute contains no language, ambiguous
or otherwise, which may reasonably be construed as expres-
sing a grant of authority to the commissioner to waive the
fee in question, the court nevertheless knows what the Legis-
lature meant to say or would have provided had its members
thought of it before the statute was enacted, and therefore
the court will add that language to the statute. In my view,
the court is not construing the statute, which is its proper
function, but instead is adding language which the court may
believe will improve the statute[1] and yield a desirable result
in this case, but which is not the court's proper function. See
*Ocean Spray Cranberries, Inc.* v. *State Tax Comm'n*, 355
Mass. 592, 597 (1969) (any desired change in statutory lan-
guage would be for Legislature to make in the first instance,
not this court); *Larkin* v. *Charlestown Sav. Bank*, 7 Mass.
App. Ct. 178, 184 (1979) ("it is axiomatic that 'statutes
must be construed as written and cannot be rewritten judi-
cially' "), quoting *Commonwealth* v. *Brooks*, 366 Mass. 423,
427-428 (1974). See also *Rosenbloom* v. *Kokofsky*, 373
Mass. 778, 781 (1977) (courts not authorized to interpret
statute so as to avoid injustice or hardship if its language is
clear and unambiguous and requires different construction);
*Harry Alan Gregg, Jr. Family Found., Inc.* v. *Commissioner
of Corps. & Taxation*, 330 Mass. 538, 544 (1954) (court
must construe statute as written, and has no right to conjec-
ture on what the Legislature would have enacted if its mem-
bers had foreseen the occurrence of a particular case).

I believe that, even if the court is right in concluding what
the Legislature meant to provide or "would have" provided,
the court is wrong — exceeds its authority — in supplying
the unexpressed provision. In addition, I do not believe that

[1]It is noteworthy that the court does so only one year after affirming
(with one Justice dissenting) a Superior Court judge's order deleting words
from G. L. c. 152, § 11A, and effectively declaring that, as modified, the
statute requires all claimants to pay the fee in question. *Murphy* v. *Com-
missioner of the Dep't of Indus. Accidents*, 418 Mass. 165 (1994).

the court's assessment of the Legislature's intent is correct. In its opinion, the court recognizes that an examination of the four procedural stages of a workers' compensation dispute demonstrates "that the Legislature created a system whereby an employee either pays no fee or may have a fee waived for indigency at any point in the dispute *except at the stage when an impartial medical examination is mandated*" (emphasis added). *Ante* at 74, 75. The court concludes, nevertheless, that "the Legislature intended to give the commissioner authority to grant requests for waivers of the impartial medical examination fee for indigent claimants, even those represented by attorneys." *Ante* at 76. By declaring that the Legislature intended to say that indigent claimants are not required to pay the impartial medical examination fee when the Legislature did not say that, and when it is clear that the Legislature knows precisely how to say that — see G. L. c. 152, § 11C (1994 ed.), which expressly provides for a waiver of the filing fee for indigents appealing from a hearing decision to the reviewing board — the court violates the canon of statutory construction that says that, if an omission from a statute was intentional, no court can supply it; if the omission was due to inadvertence, an attempt to supply it would be tantamount to adding to a statute a meaning not intended by the Legislature. *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.*, 353 Mass. 81, 84 (1967). *Mitchell* v. *Mitchell*, 312 Mass. 154, 161 (1942). Since the Legislature knows how to say that an indigent can be granted a waiver from paying a filing fee,[2] the fact that it never expressly provided for an indigency waiver with respect to the impartial medical examination fee in § 11A (2), could suggest a legislative intention *not* to grant an indigency waiver. I believe this interpretation of the omission of an indigency waiver from § 11A (2) is more plausible than the court's in-

---

[2]The Legislature has expressed, in clear language, its desire that indigents be granted waivers from paying such fees in the following statutes: G. L. c. 152, § 11C (1994 ed.); G. L. c. 261, § 27A-27G (1994 ed.); G. L. c. 231, § 60B (1994 ed.); G. L. c. 218, § 23 (1994 ed.); G. L. c. 211, § 2 (1994 ed.).

terpretation that, even though there is no express indigency waiver, the Legislature's treatment of indigents in other statutes means that the Legislature intended that § 11A (2) also provide for such a waiver.

Because I would not add language to G. L. c. 152, § 11A, I would reach the plaintiff's argument that § 11A, as modified by our decision in *Murphy II*, is unconstitutional as applied to her because she cannot pay the $350 fee and therefore is deprived of her right of appeal from the conference order to an evidentiary hearing. The plaintiff's contention is that, without a fee waiver in cases of indigency, the statute denies her due process and equal protection. I would decide that § 11A, as applied, does not violate the due process or equal protection clause of the Federal or State Constitution.

1. *Due process.* The commissioner does not contest the plaintiff's assertion that she has a property interest in her claim for workers' compensation benefits or that she possesses a right to due process to establish that claim. The commissioner argues, however, that the G. L. c. 152, § 10A, conference satisfied that right; that due process does not require, in addition, an evidentiary hearing. The commissioner is correct.

The procedural due process protections afforded property interests by the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights are subject to the same analysis. *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 514-515 & n.2 (1977), citing *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 784-785 (1975). The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976). *Goldberg* v. *Kelly*, 397 U.S. 254, 267 (1970). *Matter of Kenney*, 399 Mass. 431, 435 (1987). This does not mean, however, that the hearing must be "elaborate." *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 545 (1985). In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action. *Id.*, citing *Mathews* v. *Eldridge, supra* at 343.

The Supreme Court, in *Mathews, supra* at 335, considered whether due process requires that, prior to termination of social security disability benefits, the recipient be accorded an opportunity for an evidentiary hearing. The Court articulated three factors for courts to consider in reviewing a due process challenge to an administrative action. All three factors are variable. They explicate what is essentially a balancing test. *Mackey* v. *Montrym*, 443 U.S. 1, 11 (1979). The three relevant factors identified by the Court are as follows:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews, supra* at 335. In balancing these factors in *Mathews*, the Supreme Court held that there was no violation of due process despite the unavailability of a pretermination evidentiary hearing. *Id.* at 339-349. Application of these factors to the case at bar demonstrates that the conference without an evidentiary hearing satisfied the plaintiff's constitutional due process rights.

The first factor in the balancing process is the private interest affected by the official action challenged. In the instant case, although the plaintiff's interest in obtaining workers' compensation benefits is significant, it is no more significant than the claimant's interest in *Mathews*. In *Mathews*, the claimant's social security disability benefits were terminated at a nonevidentiary, predeprivation hearing. The Court held that this hearing satisfied the claimant's due process rights. The *Mathews* Court, *id.* at 340-343, specifically distinguished *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), a case relied on heavily by the present plaintiff, based in significant part on the importance of the interest at issue. In *Goldberg*,

*supra* at 264, the Court held that a person whose welfare benefits were being terminated was entitled to a pretermination evidentiary hearing. The *Mathews* Court distinguished *Goldberg* based on the difference between the effect of denial of welfare benefits and the effect of denial of social security disability benefits. The Court reasoned:

> "the disabled worker's need is likely to be less than that of a welfare recipient. In addition to the possibility of access to private resources, other forms of government assistance will become available where the termination of disability places a worker or his family below the subsistence level."

*Id.* at 342. Therefore, a key factor in evaluating the importance of the claimant's interest in a particular benefit, and thus the procedure due before that person can be deprived of it, is whether the government provides a "safety net" in the event of denial. The factual similarity between the present case and *Mathews* is readily apparent. In both cases, the administrative agency terminated the claimant's benefits without providing an evidentiary hearing, but, unlike the claimant in *Goldberg*, neither claimant was foreclosed from receiving assistance provided by another government program.

The second *Mathews* factor considers (1) the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used, and (2) the probable value of any additional safeguards. *Id.* at 344. An analysis of the conference procedure demonstrates that there is little risk of erroneous deprivation in the typical case and that additional safeguards would not meaningfully reduce this risk. Pursuant to G. L. c. 152 and the regulations promulgated thereunder by the department, the parties to a conference must provide the following information to an administrative judge: a memorandum setting forth the benefits claimed and issues in dispute; the stipulated facts; the exhibits to be marked for identification; the names of witnesses to be

421 Mass. 70                                         83

Neff *v.* Commissioner of the Dep't of Industrial Accidents.

presented and a summary of their anticipated testimony; and such other information as may be allowed or required. 452 Code Mass. Regs. § 1.10 (2) (1993). The judge may also require and receive reports of injury; signed statements of the employee and other witnesses; medical, hospital, and rehabilitation records; and other oral and written matter. G. L. c. 152, § 10A (1). See 452 Code Mass. Regs. § 1.10 (3) (1993).

In *Mathews, supra* at 343-345, the Supreme Court reasoned:

> "In order to remain eligible for benefits the disabled worker must demonstrate . . . that he is unable 'to engage in any substantial gainful activity by reason of any *medically determinable* physical or mental impairment. . . .' [42 U.S.C.] § 423 (d) (1) (A) (emphasis supplied). In short, a medical assessment of the worker's physical or mental condition is required. This is a more sharply focused and easily documented decision than the typical determination of welfare entitlement. In the latter case, a wide variety of information may be deemed relevant, and issues of witness credibility and veracity often are critical to the decisionmaking process. *Goldberg* noted that in such circumstances 'written submissions are a wholly unsatisfactory basis for decision.' 397 U.S., at 269.

> "By contrast, the decision whether to discontinue disability benefits will turn, in most cases, upon 'routine, standard, and unbiased medical reports by physician specialists,' *Richardson v. Perales*, [402 U.S. 389, 404 (1971)], concerning a subject whom they have personally examined. In *Richardson* the Court recognized the 'reliability and probative worth of written medical reports,' emphasizing that while there may be 'professional disagreement with the medical conclusions' the 'specter of questionable credibility and veracity is not present.' *Id.*, at 405, 407. To be sure, credibility and

84 421 Mass. 70

Neff *v.* Commissioner of the Dep't of Industrial Accidents.

veracity may be a factor in the ultimate disability assessment in some cases. But procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions. The potential value of an evidentiary hearing, or even oral presentation to the decisionmaker, is substantially less in this context than in *Goldberg*.

"The decision in *Goldberg* also was based on the Court's conclusion that written submissions were an inadequate substitute for oral presentation because they did not provide an effective means for the recipient to communicate his case to the decisionmaker. Written submissions were viewed as an unrealistic option, for most recipients lacked the 'educational attainment necessary to write effectively' and could not afford professional assistance. In addition, such submissions would not provide the 'flexibility of oral presentations' or 'permit the recipient to mold his argument to the issues the decision maker appears to regard as important.' 397 U.S., at 269. In the context of the disability-benefits-entitlement assessment the administrative procedures under review here fully answer these objections."

The G. L. c. 152, § 10A, conference procedure is similar to the procedure involved in *Mathews* because the claimant here like the claimant in *Mathews* and unlike the claimant in *Goldberg*, had the opportunity to make an oral as well as a written presentation to the administrative judge. The Supreme Court considered the right to make an oral presentation a significant factor in its determination in *Mathews* that there was little risk, in the generality of cases, of an erroneous deprivation of benefits. *Id.* at 345.

Moreover, a hearing would not necessarily provide the plaintiff with significant additional safeguards. The plaintiff has not identified the testimony she would have presented, or evidence she hoped to elicit on cross-examination of any wit-

421 Mass. 70                                    85

Neff *v.* Commissioner of the Dep't of Industrial Accidents.

ness, that would have resulted in a decision in her favor at an evidentiary hearing. In addition, at the conference, she was permitted to introduce medical reports prepared by physicians of her choosing. G. L. c. 152, § 10A (1). She would not be allowed to introduce such reports as a matter of right at a hearing. G. L. c. 152, § 11A (2). Thus, it is not clear that an evidentiary hearing would provide the plaintiff with meaningful additional procedural safeguards.

The plaintiff's contention that, under *Haley's Case,* 356 Mass. 678 (1970), she is entitled to an evidentiary hearing which includes the right to cross-examine witnesses lacks merit. The paragraph in *Haley's Case* to which the plaintiff refers concerns the "hearing" procedure then available under G. L. c. 152, §§ 8 and 10, not the conference procedure presently in effect. *Haley's Case* was decided in 1970, and the conference procedure was not instituted until 1971. *Assuncao's Case,* 372 Mass. 6, 9 (1977). *Haley's Case* was also decided before the *Mathews* decision, and thus before the Supreme Court stated that something less than an evidentiary hearing would generally satisfy due process. *Cleveland Bd. of Educ.* v. *Loudermill,* 470 U.S. 532, 545 (1985), citing *Mathews, supra* at 343.

The plaintiff's case is not strengthened by application of the third *Mathews* factor, which is the public's interest in limiting unnecessary government costs. The Commonwealth has a significant interest in requiring a party appealing a conference order to pay the costs of an impartial medical examination. None of the factors, then, favors the plaintiff's contention that her Federal or State due process rights are violated by a requirement that, despite her indigency, she is required to pay the department filing fee to be entitled to an evidentiary hearing on appeal from the conference order. This conclusion is fully supported by the Supreme Court's decision in *Mathews, supra,* and I would reject the plaintiff's argument to the contrary.[3]

---

[3]The procedure in *Mathews* did provide for a postdeprivation evidentiary hearing. However, the Court's scant attention to this issue indicates that it

2. *Equal protection.* This court's review of the plaintiff's equal protection claim is the same under the Massachusetts Declaration of Rights as it is under the Fourteenth Amendment. *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 272 (1992). In determining whether a legislative act violates the equal protection clause, two standards of review have developed. *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 649 (1977). If the legislative action "trammels fundamental personal rights or is drawn upon inherently suspect distinctions," the State must show a compelling State interest to uphold the statute. *Id.*, quoting *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 433 (1977). Alternatively, where there is no infringement of a fundamental right or any suspect class, statutory discrimination will be upheld if it is "rationally related to a legitimate governmental interest." *Kadrmas* v. *Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988). See *Murphy I, supra* at 227, citing *Paro, supra* at 649-650. I would hold that because the plaintiff's claim does not involve a fundamental right and she is not a member of a suspect class, and because the imposition of the fee for the impartial medical examination satisfies the rational basis test, the fee provision of G. L. c. 152, § 11A, as applied to her, does not violate her constitutional right to equal protection.

This court applies a rational basis test to determine whether social welfare or economic legislation violates the equal protection clause of the Fourteenth Amendment or art. 10. *Opinion of the Justices*, 368 Mass. 831, 845 (1975), quoting *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970). The Act is economic regulation. *Squillante's Case*, 389 Mass. 396, 398 (1983) ("workmen's compensation laws are economic regulations representing the Legislature's balance of competing societal interests"). Accordingly, a rational basis test applies in evaluating whether the fee violates the plaintiff's right to equal protection. *Soares* v. *Gotham Ink of*

_____

was merely an additional factor in the Court's determination that an evidentiary hearing was not required prior to the termination of social security disability benefits, and not the basis for that determination.

*New England, Inc.*, 32 Mass. App. Ct. 921, 923 (1992) (applying rational basis test to determine whether 1985 amendment to workers' compensation act that abolished the common law rights of spouses and children of an injured employee are unconstitutional under the equal protection clause). See *Ortwein* v. *Schwab*, 410 U.S. 656, 659 (1973) (appellate court filing fee, as applied to indigents seeking to appeal from agency decision reducing their welfare benefits, did not violate the due process or equal protection clause of the Fourteenth Amendment because welfare benefits do not constitute fundamental interest that is gained or lost depending on the availability of the relief sought by recipients); *United States* v. *Kras*, 409 U.S. 434, 444-445 (1973) (applying rational basis test rather than strict scrutiny in determining that fee for filing bankruptcy petition did not violate the equal protection clause of the Fourteenth Amendment because obtaining a discharge in bankruptcy is not fundamental right).

The plaintiff's argument that she is deprived of a fundamental right because the denial of an evidentiary hearing denies her a fourth-stage review before the department, which, in effect, denies her access to the courts in order to obtain judicial review of the denial of her workers' compensation claim lacks merit. Access to the courts is not an independent right. It is accorded special protection only when the right a claimant wishes to assert through such access is a fundamental right and there is no alternative forum in which that specially protected right may be enforced. See *Woods* v. *Holy Cross Hosp.*, 591 F.2d 1164, 1173-1174 & n.16 (5th Cir. 1979); *Yonikus* v. *Industrial Comm'n*, 228 Ill. App. 3d 333, 338 (1992) (right to judicial review of a workers' compensation decision is not fundamental right and is not essential to basic notions of due process). Cf. *Boddie* v. *Connecticut*, 401 U.S. 371 (1971) (Court struck down filing fee for obtaining access to the courts to obtain a divorce because dissolution of the marital relationship is fundamental right).

The plaintiff is not a member of a suspect class. A suspect class is one "saddled with such disabilities, or subjected to

such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Soares, supra* at 923, quoting *San Antonio Indep. Sch. Dist.* v. *Rodriguez,* 411 U.S. 1, 28 (1973). Such classifications have been limited to classifications based on race, religion, national origin, or similar characteristics. *Soares, supra.* The Supreme Court has held that indigency, by itself, is not a suspect class. *Kadrmas, supra* at 458, citing *Harris* v. *McRae,* 448 U.S. 297, 322-323 (1980). This court concurs with that view. *Commonwealth* v. *Tessier,* 371 Mass. 828, 831 (1977). The plaintiff is therefore not a member of a suspect class by virtue of her indigency, and she does not allege that, for other reasons, she is a member of a suspect class. Thus, a rational basis test applies to her equal protection claim.

I would conclude that the imposition of a fee to defray the cost of the impartial medical examination is rationally related to a legitimate State interest. The Legislature, in enacting G. L. c. 152, § 11A (2), provided for an impartial medical examination to reduce litigation "by eliminating the so-called 'dueling doctors' phenomenon," *Murphy II, supra* at 170, and required the parties to pay the fee for that examination. G. L. c. 152, § 11A (2). The imposition of a fee to defray the actual costs of the medical examination bears a real and substantial relationship to the express and plainly permissible purpose of establishing an impartial, self-sustaining and less adversary system for appeals involving medical issues. See *Bankers Life & Casualty Co.* v. *Crenshaw,* 486 U.S. 71, 83-85 (1988) (penalty statute that required unsuccessful appellants from money judgments to pay additional assessment of 15% of judgment did not violate equal protection clause since it was reasonably tailored to achieve the State's legitimate objectives of discouraging frivolous appeals, compensating appellees for the intangible costs of litigation, and conserving judicial resources). Thus, the imposition of the fee for the impartial medical examination, as

applied to the plaintiff, does not violate her constitutional right to equal protection.

The plaintiff argues that it is "absurd" that G. L. c. 152, § 11C, provides for a waiver of the lower filing fee for indigents appealing a "hearing" decision to the reviewing board, but G. L. c. 152, § 11A (2), does not contain such a waiver of the fee for the impartial medical examination. I do not agree. The fee for the impartial medical examination defrays an actual, out-of-pocket cost that must be paid by the department. That is why parties appealing from a conference order are required to pay the fee when the reason for the appeal concerns medical issues, but they are not required to pay the fee if the appeal is for any other reason. In contrast, the lower filing fee which the department imposes on parties appealing from a hearing decision to the reviewing board is designed to defray general administrative expenses that are otherwise absorbed by the department and paid for by legislative appropriation. The distinction, therefore, makes sense.

I would remand the case to the county court for the entry of a declaration that the fee provisions of G. L. c. 152, § 11A (2), which do not provide for an indigency waiver, as applied to the plaintiff, are constitutional.