## Steven J. Sylva's Case.

No. 97-P-1823.

Suffolk. January 12, 1999. - April 30, 1999.

Present: Greenberg, Kaplan, & Lenk, JJ.

*Workers' Compensation Act,* Prima facie evidence, Incapacity, Concurrent employment, Average weekly wages. *Evidence,* Earning capacity. *Statute,* Construction.

A reviewing board of the Department of Industrial Accidents correctly concluded, on an insurer's application for a discontinuance of benefits, that the employee was partially incapacitated with an earning capacity of $175 per week, where the record before the administrative judge warranted his conclusion that the employee could perform some kind of work other than his usual occupation. [680-682]

This court concluded that, where an employee would have remained "on call" for work with an employer but for a compensable work-related injury sustained while in the concurrent employment of a different employer, the employee could receive worker's compensation benefits based on average weekly wages for both jobs. [682-685]

Where the record of a proceeding before the reviewing board of the Department of Industrial Accidents did not allow the determination of benefits based on an employee's average weekly wages from his concurrent employment with two employers, the matter was remanded for recomputation of the rate of compensation. [685-686]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The case was reported by *Dreben,* J.

*David J. McMorris* for the employee.

*James A. Garretson* for the insurer.

GREENBERG, J. The employee appeals from a decision of the reviewing board of the Department of Industrial Accidents on the insurer's application for a discontinuance of benefits, in which the reviewing board summarily affirmed a decision of the administrative judge, finding the employee to be partially (rather than totally) incapacitated, with an earning capacity of $175 per

week. He also claims that the administrative judge erred in not finding him "in the concurrent service of more than one insured employer" within the meaning of G. L. c. 152, § 1(1).

The undisputed facts are as follows. The employee was employed as a "groundskeeper-custodian/mechanic" with the Everett Housing Authority (housing authority). On November 2, 1989, he injured his back while in the course of his employment with the housing authority. Aetna Life & Casualty, the worker's compensation carrier (insurer), accepted liability and began paying the employee $321.43 per week based on an average weekly wage of $482.14.

In January, 1990, the employee filed a claim for further benefits based on additional wages he had earned while concurrently employed as a union welder. In 1992, the insurer filed a complaint for discontinuance of the employee's benefits. At a hearing in July, 1993, the two claims were consolidated, and the administrative judge heard evidence on both issues. In his decision, the administrative judge found that as of February 9, 1993, the employee was partially disabled and had an earning capacity of $175 per week. He ordered the insurer to pay $204.76 per week from February 10, 1993, to date and continuing. The administrative judge denied the employee's claim for benefits based on concurrent employment.

Upon appeal by the employee, the reviewing board summarily affirmed the decision of the administrative judge. The employee then filed an appeal with the single justice of this court, who reported the case to a panel of justices for consideration.

1. The employee's first contention is that the administrative judge erred in finding him to have a $175 per week earning capacity. That decision, the employee argues, rests on the administrative judge's error in adopting, carte blanche, the opinion of Dr. Geuss, the impartial medical examiner. In essence, the employee claims that the administrative judge leaned too heavily on Dr. Geuss's opinion, giving it more than the prima facie effect permitted by the third paragraph of G. L. c. 152, § 11A, on the issue of his earning capacity. See *Scheffler's Case*, 419 Mass. 251, 258 (1994). We disagree. Pursuant to § 11A(2), an impartial physician's report constitutes prima facie evidence only as to matters contained in the medical report. Earning capacity entails an assessment of other factors besides the employee's physical condition. Once the extent of the medi-

cal disability has been determined, an administrative judge may make an independent determination of the employee's earning capacity. *Scheffler's Case*, 419 Mass. at 257. That decision, in turn, must focus upon factors such as the employee's work experience, education, training, and age. See *Ballard's Case*, 13 Mass. App. Ct. 1068, 1068 (1982). "[I]n the absence of testimony as to the earning capacity of the employee, the [administrative judge is] entitled to use [his or her] own judgment and knowledge in determining that question." *Mulcahey's Case*, 26 Mass. App. Ct. 1, 3 (1988), quoting *O'Reilly's Case*, 265 Mass. 456, 458 (1929).

The administrative judge stated in his decision that he accepted Dr. Geuss's conclusion that as of February 9, 1993, the employee was only partially disabled from his work-related injury. Implicit in Dr. Geuss's evaluation was the notion that the employee had the ability to engage in at least some sort of gainful employment. The administrative judge was not required to adopt the testimony of Dr. Conners, the employee's vocational expert, who stated in his report that as of August 11, 1992, when interviewed by him, the employee was "unable to engage in substantial gainful activity." Dr. Conners also testified that he had not made "any kind of assessment of whether [the employee] can do other types of work other than the work he did before [his back injury]." See *Amon's Case*, 315 Mass. 210, 215 (1943) (a fact finder may reject some or all of the testimony of an expert). The administrative judge heard testimony from the employee, a vocational expert, and numerous doctors. His findings demonstrate that he took into account the employee's relatively young age (43 at the time of the hearing), his transferable vocational skills, level of education, and lack of motivation to seek other jobs.[1] Given these considerations, the administrative judge was warranted in concluding that the employee could perform some kind of "work other than his usual occupation." See Locke, Workmen's Compensation § 342 (2d ed. 1981).

That the administrative judge in his subsidiary findings failed to mention the employee's vocational expert's evaluation does not vitiate his ultimate conclusion. As to the economic element of the incapacity issue, the administrative judge may use his own judgment and knowledge in determining the question of an earning capacity. See *O'Reilly's Case*, 265 Mass. at 458; *Per-*

[1] The employee testified that he was not actively looking for work, and had no "present plans to seek work in the open labor market."

*cival's Case*, 268 Mass. 50, 54 (1929); *Mulcahey's Case*, 26 Mass. App. Ct. at 3.

The employee makes a related argument that the administrative judge mistakenly relied upon the independent medical examiner's report with respect to the degree of disability because the examiner failed to consider the employee's heart condition and depression as "contributing factors." There is nothing to this contention because the record shows that the administrative judge took these conditions into consideration as they were independently established by other evidence. In fact, the administrative judge found that "the employee's depression is causally related to the . . . workplace injury and his treatment with Dr. C. Oliver for pulmonary problems [is] also related." However, there was other evidence implicitly credited by the administrative judge that, despite those conditions, the employee could operate his motor vehicle, do "a little cooking now and then," do some yard work, and work around his swimming pool. This evidence indicates that the administrative judge had a sufficient basis to conclude that the employee could perform some work, albeit less arduous than his previous employment. In a case such as this, where there is more than one condition involved in the employee's treatment, any lacunae in the independent medical examiner's report may be supplemented by other evidence, including the employee's testimony, depositions, medical reports of other physicians, and hospital records. The independent medical examiner's report does not provide exhaustive criteria for assessing the nature and extent of the employee's disability.

2. We now consider whether the administrative judge properly rejected the employee's claim of concurrent employment within the meaning of G. L. c. 152, § 1(1), and thus correctly computed his average weekly earnings solely on the basis of his earnings from the housing authority.[2]

The undisputed facts relevant to the statutory conditions

[2]The definition of "average weekly wages" appearing in G. L. c. 152, § 1(1), as amended by St. 1935, c. 332, § 1, and St. 1943, c. 529, § 1, so far as material, reads, "In case the injured employee is employed in the concurrent service of more than one insured employer or self-insurer, his total earnings from the *several* insured employers and self-insurers shall be considered in determining his average weekly wages" (emphasis added).

Prior to the amendment of G. L. c. 152, § 1(1), by St. 1935, c. 332, § 1, it was the rule that "[w]here the employee who had concurrent contracts with more than one employer to render services at different times during a week

which permit assertion of concurrent employment in the employee's compensation claim are as follows: during 1989 (records were not submitted for prior years), the employee earned an annual salary of $25,000 from his day job with the housing authority. In addition, through the International Brotherhood of Boilermakers' Union Local 29, he was assigned to work evenings as an "on call" welder and boilermaker, earning about $14,000 from three different employers. He remained "on call" before his injury and had completed his last assignment as a welder about one month before his injury.

The administrative judge denied the claim for concurrent employment on the basis of *Chartier's Case*, 19 Mass. App. Ct. 7, 8-11 (1984). There, we stated, "As the claimant here 'quit' his [second] job at Belchertown, we are not called upon to review a situation where an employee is furloughed, discharged without good cause, or otherwise involuntarily released by one of his employers." *Id.* at 10 n.5. This case raises the issue, alluded to in *Chartier's Case*, of whether substantial intermittent employment may be considered as concurrent under the statute.

The employee relies on *Nelson's Case*, 333 Mass. 401, 403-404 (1956). Nelson had been employed as a jackhammer operator, and also worked as a taxi driver on Friday and Saturday evenings and other occasional times under a contract of hire with a taxi company. Unlike the situation presented here, he returned to work each week and on the same contract, and his work as a taxi driver was ongoing at the time of his work-related injury as a jackhammer operator. The *Nelson* court held that an employee could be found to be in concurrent service of more than one employer where during regular periods of the week he had undertaken to perform services for more than one employer. *Ibid.* The situation is somewhat different here. To earn additional wages as a welder, the employee was required to list himself on Local 29's "out of work" list and await a call for employment. The administrative judge found that, "[a]s work was made available, the employee would be called in by the union local . . . . He was working (at various times in

was injured in the course of performance of one of those contracts, the rate of compensation usually was not to be based upon the total earnings the employee had received from his various employers, and this was true even if all the contracts called for services similar to those which were being performed by the employee when he was injured." *Nelson's Case*, 333 Mass. 401, 402 (1956).

1989) at T. O'Connor up to October 1989 when the job was over and the employee was terminated for lack of work. The [e]mployee testified, however, he was available for work." Implicit in his findings is the conclusion that the employee was available for welding work until he was injured in November, 1989.

Section 1(1) of G. L. c. 152 lacks precision as to whether intermittent employment which generates earnings for the employee can be used to calculate average weekly wages. When construing a statute, words or phrases used in any part of a statute should be related and considered in light of their context. *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 337 (1982). In *Robinson's Case*, 354 Mass. 282, 286 (1968), the injured worker was employed full-time at a supermarket and part-time at a local Jewish Community Center. The court held that the employee's average weekly wages, as defined under § 1(1), was to be derived from earnings from both employers. Worker's compensation benefits were not to be apportioned between the employers' insurers under G. L. c. 152, § 26B[3]; rather, benefits were to be paid entirely by the insurer of the employer for whom the employee was working when injured. We learn from *Robinson's Case* that harmonizing the definition of concurrent employment under § 1(1) with the "joint and several" language that appears in § 26B requires a broad interpretation, viewed in light of the worker's compensation statute's purpose to "promote the accomplishment of its beneficent design." *Neff* v. *Commissioner of the Dept. of Industrial Accs.*, 421 Mass. 70, 73 (1995), quoting from *Young* v. *Duncan*, 218 Mass. 346, 349 (1914). Likewise, in the instant case, where the employee did not leave his second job of his own volition, it would prove an irrational result were we to adopt the administrative judge's restrictive interpretation of the

---

[3]Section 26B provides as follows:

> "When an employee employed in the concurrent service of two or more insured employers receives a personal injury compensable under this chapter while performing a duty which is common to such employers, the liability of their insurers under this chapter shall be joint and several. Each insurer or self-insurer liable under this section shall pay compensation according to the proportion of the wages paid by its insured in relation to the concurrent wage which the employee received from all insured employers."

phrase "concurrent service," as it appears in § 1(1), to mean that the employee must be actually employed or under a contract of hire at the time of the injury. Here, it was beyond the employee's control whether his work as a welder was to be extended on a weekly basis. On the record before us, it appears that whether the employee obtained work as a welder depended on his ranking on the union's "out of work" list and the location of the welder's jobs that became available.

From the language of § 1(1), its legislative history, and its context, it appears that the term "average weekly wages" includes wages earned from concurrent employment where the employee is injured after involuntary termination from a second job from which income is derived. The worker's compensation statute is a remedial one and, as such, should be given "a broad interpretation, viewed in light of its purpose." *Neff* v. *Commissioner of the Dept. of Industrial Accs.*, 421 Mass. at 73. "The history of work[er's] compensation in this Commonwealth shows that the Legislature gradually but consistently has enlarged the scope of the laws pertaining to it and that the courts have construed them liberally for the protection of the injured employee." *Roberge's Case*, 330 Mass. 506, 509 (1953). We therefore conclude that when an employee would have remained "on call" for work with an employer but for a compensable work-related injury sustained while in the concurrent employment of a different employer, he or she may receive worker's compensation benefits based on average weekly wages for both jobs.

Where, by reason of what appears in the record, it is not possible to determine the correct benefits based on the employee's average weekly wages from both employments, remand of the case to the Department of Industrial Accidents is necessary. For purposes of computation of his worker's compensation rate, the employee is entitled to have his earnings from his job at the housing authority combined with his earnings as a welder for the twelve-month period prior to his injury. The applicable procedure is outlined in 452 Code Mass. Regs. § 1.07(2)(a) (1993).

The part of the decision of the Department of Industrial Accidents denying the employee benefits based on wages earned from concurrent employment is vacated, and the case is

remanded for a recalculation of the employee's average weekly wage. In all other respects, the decision is affirmed.

*So ordered.*