## MICHAEL DAVIS'S CASE.

Suffolk. October 6, 1939. — December 27, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Workmen's Compensation Act*, Filing of claim, Incapacity. *Proximate Cause.*

A finding, that failure of an employee to file a claim for compensation under the workmen's compensation act for about twenty-two months after he sustained an injury through contracting dermatitis was not prejudicial to the insurer within § 49 of the act, was warranted by evidence of knowledge of the employer of the dermatitis when it first occurred and of extended treatment thereafter by the employer's doctor and nurse.

Evidence warranted findings that an employee's exposure to irritants in working as a dyer was causally related to his condition at a time some two years after dermatitis first appeared, and that use of water in sweeping, at which he worked during the two years in place of his former work, was not an intervening cause.

A finding of partial incapacity, but not of total incapacity, of an employee was warranted by evidence that after developing dermatitis from contact with irritants in working as a dyer, he worked nearly two years

at another kind of work, when he was "laid off," and, though still suffering from the dermatitis, was then able to do work which did not involve contact with irritants.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation.

A decree in accordance with the board's decision was entered by order of *Brogna*, J. The insurer appealed.

The case was submitted on briefs.

*J. F. Scannell & E. E. Andrews*, for the insurer.

*T. M. A. Higgins*, for the claimant.

COX, J. This employee's claim for compensation, based upon industrial poisoning and causally related dermatitis, was filed November 26, 1937; the time of injury is given as, "Dye House," the cause of injury as, "Poison in dyes," and the nature of the injury as, "Skin disease." Although the record does not disclose that any time of injury was stated in the claim, nevertheless it is apparent from the record that the time asserted at the hearings was either January 10, or January 19, 1936. No point was made at the argument of the failure to state the time of the alleged injury.

The employee had worked for twenty-eight years in his employer's dye house, always at dyeing and bleaching. According to his testimony, he "got sore hands" on January 19, 1936. He showed his hands and explained his condition to his boss who took him to the superintendent, and the latter took him to the hospital where he was seen by Dr. Durstoff. Except for brief intervals, the employee continued to work for the same employer until November 10, 1937, although, as hereinafter appears, his work was changed to that of sweeping. The single member found that the employee's condition was causally related to his employment; that because of his work in the dye house and his coming in contact with dyes and chemicals, he sustained a dermatitis of his hands on January 19, 1936; that since November 10, 1937, he has been suffering from a dermatitis of the hands as a result of which he has been totally disabled for work. Compensation was awarded on the basis of total disability from November 10, 1937. The reviewing board affirmed and adopted the findings and the decision of the single mem-

ber and found further that the employer, under date of
January 10, 1936, made a report of facts under G. L. (Ter.
Ed.) c. 152, § 19, of a personal injury to the employee, de-
scribing the occurrence of said injury as, "This man's arms
became irritated from using dyes," stating that the nature
of the injury was "skin irritation," and that the employee
became disabled on January 10, 1936.  The board further
found that the employer, through a superintendent, ar-
ranged for treatment of the employee's condition by Dr.
Durstoff, "physician of the employer or insurer at the onset
of the condition, January 10, 1936"; that the employee,
having been supplied work of a nature that did not further
expose him to the danger of skin affection or disablement,
had reasonable cause for not filing his claim sooner than
November 26, 1937; that neither the employer nor the
insurer was prejudiced by the employee's failure to file
claim within the statutory period, and that the employee
throughout sought and obtained the medical treatment that
he expected would diagnose and cure his condition.  The
insurer appealed from the final decree that was entered
awarding compensation for total disability and costs, and
makes three contentions: (1) that the proceedings for com-
pensation were barred by the employee's failure to file his
claim for compensation for injury in the form and within
the time prescribed by statute; (2) that it could not be
found that the employee's condition on November 10, 1937,
or at the time of the hearings in 1938, was causally related
to his employment with the subscriber on "November 10,
1936 [7?], or at any time prior to June, 1936, when this
insurer went off the risk"; and (3) that a finding was not
warranted that the employee had been totally incapaci-
tated for work, regardless of the date or cause of his injury,
subsequently to November 10, 1937.

1. G. L. (Ter. Ed.) c. 152, § 41, among other things, con-
tains a provision that no proceedings for compensation for
injury to an employee shall be maintained "unless the claim
for compensation with respect to such injury has been made
within six months after its occurrence."  Section 49 of said
chapter, among other things, provides that failure to make

a claim within the time fixed by § 41 shall not bar proceedings under said c. 152 if it is found that "it was occasioned by mistake or other reasonable cause, or if it is found that the insurer was not prejudiced by the delay."

It could have been found that the insurer was not prejudiced by the delay in filing the claim. The burden of proof in this particular was on the employee, *Booth's Case*, 289 Mass. 322, 325, but the burden is sustained if he introduces evidence from which a reasonable inference can be drawn that the insurer suffered no prejudice. *Zabec's Case*, 302 Mass. 465, 469, and cases cited. Whether the burden was sustained in the case at bar, and commonly, is a question of fact, *McGowan's Case*, 288 Mass. 441, 444, and the inquiry here is whether there was evidence to support the findings of the board. *Zabec's Case*, 302 Mass. 465. There was evidence that Dr. Durstoff "has been physician for the Waterhead Mills [employer] for the insurer"; that he saw the employee at the Lowell General Hospital on January 10, 1936; and that he submitted a report to the insurer "on January 1936," where, in answer to the question, "State in the employee's own words, where and how the accident happened," he gave the answer, "Following the use of dyestuffs." The doctor "kept the employee under treatment from January 10, 1936 until February 15, 1937." It is true that he testified that when he first saw the employee he had an acute dermatitis on his forearms, and that he did not recall that it was on his hands at that time, but he also testified that the employee came to him for treatment on January 28, 1937, with his hands broken out "again." Furthermore, it could be found that Dr. Durstoff directed the employee to wear gloves that were furnished to him by the employer, and that as a result of the doctor's treatment and recommendations, the employee was taken from his work with dyestuffs and given a sweeping job. The employer's record disclosed that the employee started on the sweeping job on February 5, 1936. Furthermore, there was evidence that after about one month of treatment, Dr. Durstoff "would come to the shop to treat" the employee; that the nurse there treated

him; that he procured medicine from the first aid department of the employer; and that the doctor took over the first aid department in the last of April, 1936. A finding was warranted that the employer knew of the employee's condition in January, 1936. The finding of the board on the question of want of prejudice cannot be disturbed. *Tingus's Case*, 273 Mass. 453, 455. *Johnson's Case*, 279 Mass. 481, 485. *Wnukowski's Case*, 296 Mass. 63, 66. See *Kangas's Case*, 282 Mass. 155.

This being so, it is unnecessary to consider whether the failure to file the claim within the statutory period was occasioned by mistake or other reasonable cause. The provisions of said § 49 are in the alternative. *Zabec's Case*, 302 Mass. 465, 469, and cases cited.

2. It could have been found that the employee's condition on November 10, 1937, or at the time of the hearings in 1938, was causally related to his employment in January, 1936, or, in any event, prior to June, 1936, when, it appears, the insurer in question "went off the risk." The insurer does not question that industrial dermatitis, so called, induced by the necessary exposure of employment, falls within a recognized class of personal injuries. *Panagotopulos's Case*, 276 Mass. 600, 604, and cases cited. *Robinson's Case*, 299 Mass. 499. The employee testified that his hands never got better between January, 1936, and the date of the hearing, which was in May, 1938. There was evidence that before May, 1936, and from then until into August, 1937, the employee's hands were dressed with "rags." Although there was evidence that there was a recurrence of the employee's condition, it could have been found that the original condition of dermatitis did not entirely disappear, and that the subsequent exposure in the use of water for washing that was a part of his sweeping job did not result in a distinct injury that constituted an independent, intervening cause for his incapacity. *Wentworth's Case*, 284 Mass. 479, 484. *Evans's Case*, 299 Mass. 435.

3. The burden rested upon the employee of showing by a preponderance of the evidence the nature and extent of

his incapacity. *Ginley's Case,* 244 Mass. 346, 348. He did not sustain the burden of showing total incapacity. He stopped work about November 10, 1937, when he was "laid off." Up to that time he had been working regularly, and if he had not been laid off, would have kept on. He has not looked for work anywhere since he got through. When asked if he felt that he had been able to work since November, 1937, he replied, "That is entirely up to the doctor." The medical testimony was that he would be able to do some work, especially where he could protect his hands and keep away from any irritating substances. An analysis of the testimony of his own physician, who first saw him on December 21, 1937, shows also that the employee is able to do some work, "Any other type of work except work where he comes in contact with these irritants." There is nothing to indicate any unsuccessful attempts upon the part of the employee to secure employment after his discharge. See *Driscoll's Case,* 243 Mass. 236, 239; *Dow's Case,* 252 Mass. 191, 192–193; *Fennell's Case,* 289 Mass 89, 94.

There was evidence, however, of partial disability.

The decree of the Superior Court is reversed, and a decree is to be entered remanding the case to the Industrial Accident Board for further proceedings not inconsistent with this opinion. See *Capone's Case,* 239 Mass. 331; *Coakley's Case,* 284 Mass. 559, 562; *Crowley's Case,* 287 Mass. 367, 376.

*So ordered.*