ROBERT MULCAHEY'S CASE.

No. 87-436.

Suffolk. January 19, 1988. — May 5, 1988.

Present: GRANT, CUTTER, & ARMSTRONG, JJ.

*Workmen's Compensation Act,* Incapacity, Presumptions and burden of proof, Findings by Industrial Accident Board.

At the hearing on an insurer's application for discontinuance of total incapacity compensation payments to an employee who had been injured at work, a reviewing board of the Industrial Accident Board was warranted in finding that the employee was now partially, rather than totally, incapacitated, where the ultimate opinion of the employee's physician attested only to the employee's inability to return to his former work, and where the employee acknowledged that he currently engaged in some range of normal activities but had not sought work less demanding than his earlier occupation. [2-3]

In view of the limited evidentiary record before it in proceedings on an insurer's application for discontinuance of total incapacity payments to an injured employee, a reviewing board of the Industrial Accident Board, once having determined that the employee had not carried his burden of proving total incapacity, properly could rely on its members' own judgment and knowledge and find him to have an earning capacity of $100 a week, without making any finding as to available alternative jobs within his limited capacity to perform. [3-4]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

The case was heard by *Haskell C. Freedman*, J., sitting under statutory authority.

*John J. Nolan* for the employee.

*Mark D. Horan* for the insurer.

ARMSTRONG, J. The employee, who was sixty-three years old at the time of the decision of the reviewing board, had been injured at work in December, 1981, and had been paid total incapacity compensation to June, 1983. He appealed from a decision entered on the insurer's application for discontinuance, the decision finding him to be partially (rather than totally) incapacitated, with an earning capacity of $100 per week.

The employee's occupation had been as a truck driver and mover, and the injury occurred when a cart of books he was moving from a truck into the Suffolk University Law School library dislodged the ramp leading from the truck to the sidewalk, causing him to fall four feet or more, with the cart of books landing on top of him. He suffered a backstrain and a crushing injury to his right ankle, but there was no disc herniation, nor were there any broken bones. The physician engaged by the insurer could find no objective reason why the employee could not return to his former work as a truck driver and mover, although he conceded that there was a residual five percent loss of function in the ankle. The employee's physician credited the pain and stiffness complained of by the employee, but his ultimate opinion on the employee's working capacity went no further than attesting to his inability to return to his former work as a truck driver and mover. The employee acknowledged some range of normal activities, such as driving, housecleaning, helping his wife shop, all, however, in limited doses. He conceded that he had not sought lines of work less demanding than his earlier occupation. On this state of the evidence the single member and, after him, the reviewing board were not obliged to find the employee totally rather than partially disabled. Compare *McCann's Case*, 286 Mass. 541 (1934); *Davis's Case*, 304 Mass. 530, 534-535 (1939); *Cierri's*

*Case*, 379 Mass. 914 (1979). Contrast *Frennier's Case*, 318 Mass. 635, 639 (1945), where the employee's inability to use his hands without severe pain "prevent[ed] him from performing remunerative work of a substantial and not merely trifling character."

The employee's principal contention is that the board erred in finding him to have a $100 per week earning capacity without identifying particular jobs which were within his limited ability to perform and which were in fact available. *Ballard's Case*, 13 Mass. App. Ct. 1068 (1982), should not be read as so holding, at least in cases where, as here, a limited evidentiary record would not enable the board to make findings with respect to alternative lines of work. The burden of proving incapacity rests with the employee, see *Davis's Case*, *supra*, even where compensation has been awarded and the insurer is applying for discontinuance, see *Ginley's Case*, 244 Mass. 346, 348 (1923). The absence of evidence with respect to specific job alternatives is not unusual. Neither the insurer, trying to prove that the employee is able to return to his usual line of work, nor the employee, trying to prove his total incapacity, is likely to proffer evidence that, if persuasive, would tend to compromise its or his position. Thus, once the board has determined that the employee has shown only partial incapacity, "in the absence of testimony as to the earning capacity of the employee, the members of the board are entitled to use their own judgment and knowledge in determining that question." *O'Reilly's Case*, 265 Mass. 456, 458 (1929). *Percival's Case*, 268 Mass. 50, 54 (1929). See also *Royal's Case*, 286 Mass. 374, 377 (1934); *Nowack's Case*, 2 Mass. App. Ct. 498, 500 (1974). Because the burden of proving incapacity, whether total or partial, is on the employee (*Ballard's Case*, at 1068), the single member's finding that the employee has an earning capacity of $100 per week is tantamount to a statement that the evidence leaves the single member unpersuaded that the employee is precluded by his condition from doing any types of work at the lower end of the wage scale. Compare *Lovasco's Case*, 4 Mass. App. Ct. 854 (1976); *Trefrey's Case*, 5 Mass. App. Ct. 773 (1977).

Examination of appellate records indicates that *Ballard's Case* was in fact an instance of inadequate findings of fact by the board. The board's decision consisted primarily of recitations of testimony, and a critical ultimate finding of fact purported to be based on the board's adoption of both of two conflicting medical opinions. As the court pointed out, the board's decision lacked subsidiary findings "sufficiently specific to enable a reviewing court to determine whether the denial of the award of total disability was proper or 'whether the board applied correct principles of law.'" *Ballard's Case,* at 1068, quoting from *Johnson's Case,* 355 Mass. 782, 783 (1968). *Ballard's Case* falls within the principles represented by such cases as *Messersmith's Case,* 340 Mass. 117, 120 (1959), and *Camaioni's Case,* 7 Mass. App. Ct. 927 (1979), regarding the inadequacy of a mere recitation of testimony in place of proper fact-finding, and such cases as *Whitaker's Case,* 354 Mass. 4, 5 (1968), and *Wajda's Case,* 6 Mass. App. Ct. 865 (1978), regarding the defectiveness of an ultimate finding which conflicts with testimony specifically found credible or with uncontradicted testimony not discredited by the board.

On the other point argued, we think that the single member's characterization of Dr. Grady's opinion on partial disability was a reasonable interpretation of his entire testimony.

*Judgment affirmed.*