852    447 Mass. 852 (2006)

Coverall North America, Inc. *v.* Commissioner of the Division of Unemployment Assistance.

Coverall North America, Inc. *vs.* Commissioner of the Division of Unemployment Assistance & another.[1]

Middlesex. October 4, 2006. – December 12, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Employment Security,* Employment relationship, Burden of proof.

In an action seeking judicial review of a decision of the division of unemployment assistance that a claimant was an employee of the plaintiff within the meaning of G. L. c. 151A, § 2, and thus, that the plaintiff was required to pay contributions for the claimant's reported earnings pursuant to G. L. c. 151A, §§ 13 and 14, the District Court judge properly concluded that the plaintiff had not met its burden of establishing that the claimant was an independent contractor within the meaning of G. L. c. 151A, § 2 (*c*), where the claimant worked only at the locations the plaintiff provided and was given a plan of action and was directed to follow it by the plaintiff's supervisors; where, even if the claimant was capable of being an entrepreneur and expanding her own business, the growth of her business would inevitably expand the plaintiff's clientele base, as each new client became a client of the plaintiff's; and where the claimant's business ended once the plaintiff discharged her. [856-859]

Civil action commenced in the Woburn Division of the District Court Department on September 2, 2004.

The case was heard by *Paul L. McGill,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael D. Vhay* (*Norman Leon* with him) for the plaintiff.

*David A. Guberman,* Assistant Attorney General, for Commissioner of the Division of Unemployment Assistance.

*Jennifer L. Huggins,* for Rhina Alvarenga, submitted a brief.

The following submitted briefs for amici curiae:

*Donald J. Siegel, Ira Sills,* & *Indira Talwani* for Service Employees International Union & another.

*Roscoe Trimmier, Jr.,* & *John P. Bueker* for International Franchise Association.

---

[1]Rhina Alvarenga.

*Catherine K. Ruckelshaus*, of New York, *Shannon Liss-Riordan, & Hillary Schwab* for National Employment Law Project & others.

IRELAND, J. A District Court judge affirmed the decision of the division of unemployment assistance (division) that the claimant[2] was an employee within the meaning of G. L. c. 151A, § 2, thus requiring Coverall North America, Inc., doing business as Coverall Cleaning Concepts (Coverall), to pay contributions for the claimant's reported earnings pursuant to G. L. c. 151A, §§ 13, 14. On appeal, Coverall claims that the division's decision is unsupported by substantial evidence because Coverall has proved that the claimant was an independent contractor pursuant to G. L. c. 151A, § 2 (*a*)-(*c*). We transferred the case to this court on our own motion. Because we conclude that Coverall has not met its burden of establishing that the claimant was an independent contractor, see G. L. c. 151A, § 2 (*c*), we affirm the judge's decision.[3]

*Procedural and factual background.* We set forth the relevant facts, supplementing as needed the facts found by the division's review examiner. Coverall sells franchises[4] specializing in commercial janitorial cleaning businesses. In the "start-up phase," Coverall provides new franchisees with a complete training program covering aspects of the commercial cleaning business, Coverall cleaning techniques, and effective management techniques. Additionally, Coverall provides new franchisees with an initial customer base. Coverall also allows franchisees to solicit prospective customers directly. If the franchisee establishes a new customer through this mechanism, the new

---

[2]Typically, we would refer to the claimant as a franchisee; however, because we conclude that this individual is not a franchisee, we refer to her as the claimant.

[3]We acknowledge the amicus briefs of the International Franchise Association; Service Employees International Union and Service Employees International Union, Local 615; and National Employment Law Project, Brazilian Immigrant Center, Labor Council for Latin American Advancement, Massachusetts Coalition for Occupational Safety and Health, Centro Presente, and Chinese Progressive Association.

[4]Given our conclusion, our references herein to the terms "franchise," "franchisee," "franchise owner," "franchise agreement" do not reflect a determination concerning the nature of other Coverall contracts beyond the contract at issue in this case.

customer is required to sign a contract with Coverall. Each month, Coverall directly bills all customers. In turn, the franchisee receives payment from Coverall for the services rendered to the customers, which may reflect deductions for finance charges, royalties, and management fees. Although franchisees are not charged sales and marketing fees, they are obligated to pay Coverall royalty and management fees.

The claimant began working at Sunrise Nursing Home (Sunrise), located in Arlington in January, 2003, under the direction of a Coverall franchisee. Shortly thereafter, the franchisee lost the Sunrise account. Because of the claimant's interest in maintaining a position at Sunrise, she inquired into purchasing a franchise from Coverall. On May 29, 2003, the claimant became a franchise owner. To become a franchise owner, the claimant was required to sign a contract. She understood that becoming a Coverall franchise owner would allow her to continue her work at Sunrise. At the time she signed the agreement, the claimant paid Coverall $3,800 in cash and agreed to pay an additional $6,700 toward the purchase of a Coverall franchise.

After signing the franchise agreement, the claimant was promised and given the Sunrise account. Coverall assigned the claimant to work at Sunrise Monday through Friday, five hours per day, for an indefinite period. The claimant understood that she would receive $1,485 per month for services she provided to Sunrise. She also understood that certain deductions, including management fees, royalties, and supply costs, would be subtracted from this monthly amount.

As was its practice, Coverall negotiated the contract amount directly with Sunrise and billed it directly, all without any involvement of the claimant. If Sunrise had a complaint regarding the quality of the claimant's service, the complaints would be channeled directly through Coverall and resolved by a Coverall field consultant. Moreover, the claimant lacked her own business cards and clientele, apart from Coverall clients.

Each morning, the claimant met with a Sunrise employee who directed her to complete a list of daily tasks and closely supervised her. She had to check in with this employee on arrival and was required to check out with him prior to leaving. The claimant was also supervised by a Coverall field consultant.

447 Mass. 852 (2006) 855

Coverall North America, Inc. *v.* Commissioner of the Division of Unemployment Assistance.

While working at Sunrise, the claimant discovered that the assigned tasks could not be completed during the twenty-five hour work week. She complained to the Coverall field consultant who directed her to complete the assigned tasks nonetheless. Consequently, the claimant began working longer than the five hours per day she initially agreed to and worked weekends to accommodate the workload she was assigned. The claimant also completed "special projects" for Sunrise at the insistence of Coverall. Although the claimant testified that she was assured that she would be compensated for these "special projects" and the additional number of hours beyond the stipulated contractual hours, the claimant was never paid any additional money. In response, the claimant refused to continue the additional work. The hearing examiner found that, subsequently, in October, 2003, the Coverall regional director "discharged" the claimant.

On November 21, 2003, the claimant filed a claim for unemployment benefits. The division (then the division of employment and training) issued a notice of determination rejecting the claimant's request for unemployment compensation. The decision was based on the determination that the services performed by the claimant did not constitute "employment"[5] within the meaning of G. L. c. 151A, § 2, and that the claimant was acting as an independent contractor. The claimant appealed from that determination.

A hearing was conducted before a review examiner. Two witnesses testified before the examiner, the claimant and Coverall's regional director. The examiner's decision reversed the initial determination. The examiner determined that Coverall failed to satisfy all three prongs required by G. L. c. 151A, § 2 (*a*)-(*c*),[6] establishing that the claimant was an independent contractor.

---

[5]"Employment" is defined by G. L. c. 151A, § 1 (*k*), as "service, including service in interstate commerce, performed for wages or under any contract, oral or written, express or implied, by an employee for his employer as provided in this section and in [G. L. c. 151A, §§ 2, 3, 4A, 5, 6, and 8C]."

[6]General Laws c. 151A, § 2, states, in relevant part:

"Services performed by an individual, except in such cases as the context of this chapter otherwise requires, shall be deemed to be employment subject to this chapter irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the commissioner that —

The examiner concluded that Coverall was obligated to pay contributions based on the reported earnings the claimant received during her employment with Coverall. Coverall filed an appeal to the board of review (board) requesting reversal of the decision of the examiner. The board affirmed the examiner's decision.

Pursuant to G. L. c. 151A, § 42, Coverall filed a request for judicial review of the board's decision claiming that the board's final decision was arbitrary or capricious, was not based on the record, and misinterpreted G. L. c. 151A. A District Court judge affirmed the board's final decision, concluding that the decision was based on the correct application of law and was not arbitrary, capricious, or an abuse of discretion. Moreover, the judge found that Coverall failed to meet its burden of proof under the statute.

*Discussion.* An employer is required to contribute to the unemployment compensation fund under G. L. c. 151A if an employment relationship exists between the "employing unit"[7] and the individual providing services to the employer. Employment is defined as "service . . . performed for wages or under any contract, oral or written, express or implied, by an employee

> "(*a*) such individual has been and will continue to be free from control and direction in connection with the performance of such services, both under his contract for the performance of service and in fact; and

> "(*b*) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

> "(*c*) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

[7]"Employing unit" is defined as "any individual or type of organization including any partnership, firm, association, trust, trustee, estate, joint stock company, insurance company, corporation, whether domestic or foreign, or his or its legal representative, or the assignee, receiver, trustee in bankruptcy, trustee or successor of any of the foregoing or the legal representative of a deceased person who or which has or subsequent to January first, nineteen hundred and forty-one, had one or more individuals performing services for him or it within this commonwealth." G. L. c. 151A, § 1 (*j*).

for his employer." G. L. c. 151A, § 1 (*k*). To be exempted from the requirement of contributions to the fund, an employer must establish that an individual providing services is an independent contractor. Pursuant to G. L. c. 151A, § 2, the employer bears the burden of proving "that the services at issue are performed (a) free from control or direction of the employing enterprise; (b) outside of the usual course of business, or outside of all the places of business, of the enterprise; and (c) as part of an independently established trade, occupation, profession, or business of the worker." *Athol Daily News* v. *Board of Review of the Div. of Employment & Training*, 439 Mass. 171, 175 (2003). The conditions are conjunctive. Therefore, if an employer fails to establish any one of the three prongs, the services in question will constitute "employment" within the meaning of G. L. c. 151A. This three-part test is commonly known as the "ABC" test.

Here, the division concluded that Coverall failed to meet its burden with respect to all three prongs of the ABC test. In reviewing an agency's decision, the court "shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7). The reviewing court must determine whether "an agency decision is supported by substantial evidence" to determine whether the decision is valid. *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). The agency's decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law. G. L. c. 30A, § 14 (7).

Coverall claims that it satisfied its burden of proving that the claimant was an independent contractor under all three prongs of G. L. c. 151A, § 2 (*a*)-(*c*). We need not belabor whether Coverall satisfied the first two prongs of G. L. c. 151A, because the weight of the evidence establishes that Coverall failed to satisfy the third prong, G. L. c. 151A, § 2 (*c*).[8]

Under the third prong, the court "is to consider whether the

---

[8]Concerning prongs (a) and (b), Coverall argues, respectively, that the divi-

service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services." *Athol Daily News* v. *Board of Review of the Div. of Employment & Training, supra* at 181. The division found that the claimant did not operate an independent business apart from Coverall. To support this conclusion, the division found that the claimant only cleaned at the locations Coverall provided and was provided with a plan of action and directed to follow it by Coverall supervisors.

Coverall argues that the division erred by classifying the claimant as a Coverall employee and incorrectly focused on what the claimant actually did with her franchise instead of what she was capable of. Coverall reads the *Athol* case as establishing a "capability test," which considers what an individual is capable of doing as opposed to what an individual actually did. Coverall claims that the franchise agreement that the claimant signed allowed her to be an entrepreneur and to expand her business by hiring employees and directly soliciting new customers. Coverall thus argues that although the claimant did not take advantage of these opportunities, she is still an independent contractor because she was capable of expanding her business. We disagree.

Although the court can consider whether a worker is "capable of performing the service to anyone wishing to avail themselves of the services," the court may also consider whether "the nature of the business compels the worker to depend on a single employer for the continuation of the services." *Athol Daily News* v. *Board of Review of the Div. of Employment & Training, supra.* In this regard, we determine "whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise." *Boston Bicycle Couriers, Inc.* v. *Deputy Director of the Div. of Employment & Training,* 56 Mass. App. Ct. 473, 480

---

sion erred in concluding that Coverall "controlled and directed" the services provided by the claimant to Sunrise and that the division incorrectly concluded that Sunrise was Coverall's place of business.

(2002). Here, the claimant was required to allow Coverall to negotiate contracts and pricing directly with clients, bill clients, and provide a daily cleaning plan to which the claimant was required to adhere. Thus, the claimant was compelled to rely heavily on Coverall. Even if the claimant was capable of being an "entrepreneur" and expanding her own business as Coverall suggests, it is undisputed that the growth of her own business inevitably expanded Coverall's clientele base, as each new "client" became a Coverall client. Moreover, even though Coverall argues that the claimant was not compelled to depend on Coverall because the claimant had been in the cleaning business six years prior to becoming a "franchise owner," she testified at the hearing that her business subsequently ended once Coverall "discharged" her. Because the examiner's final conclusions incorporated these facts, we conclude that there was substantial evidence supporting the examiner's conclusion that Coverall failed to satisfy its burden of establishing that the claimant's business was independent of Coverall under the third prong of the ABC test.

*Conclusion.* For the foregoing reasons, we conclude that the review examiner's determination that the claimant was not an independent contractor within the meaning of G. L. c. 151A, § 2, but a worker who was controlled by Coverall is supported by substantial evidence, and we affirm the District Court judge's decision.

*So ordered.*