426        68 Mass. App. Ct. 426 (2007)

Commissioner of the Division of Unemployment Assistance *v*. Town Taxi of Cape Cod, Inc.

COMMISSIONER OF THE DIVISION OF UNEMPLOYMENT
ASSISTANCE *vs.* TOWN TAXI OF CAPE COD, INC.

No. 06-P-684.

Suffolk. January 12, 2007. - March 12, 2007.

Present: KANTROWITZ, DOERFER, & KATZMANN, JJ.

*Employment Security,* What constitutes employment. *Taxicab.*

In a civil action challenging a decision of the review examiner of the division
of unemployment assistance, the Boston Municipal Court judge correctly
concluded that drivers for the defendant taxicab company were independent
contractors rather than "employees" within the meaning of G. L. c. 151A,
§ 2, for purposes of unemployment compensation, where the drivers had
the freedom of choosing which shifts to work and were not obligated to
respond to calls from the defendant regarding a prospective customer in a
driver's vicinity, the drivers' services were performed outside of all the
places of business of the defendant, and the drivers were permitted to
engage in other employment or seek their own businesses while using a
taxicab leased from the defendant. [428-432]

CIVIL ACTION commenced in the Boston Municipal Court
Department on August 29, 2005.

The case was heard by *Michael J. Coyne*, J.

*Julie B. Goldman*, Assistant Attorney General, for the
plaintiff.

*Brian J. Wall* for the defendant.

KANTROWITZ, J. At issue is whether the drivers for Town Taxi
of Cape Cod, Inc. (Town Taxi), are independent contractors or
employees within the meaning of G. L. c. 151A, § 2, for
purposes of requiring Town Taxi to pay unemployment com-
pensation.[1] We affirm the judgment of the Boston Municipal

[1]"An employer is required to contribute to the unemployment compensa-
tion fund under G. L. c. 151A if an employment relationship exists between
the 'employing unit' and the individual providing services to the employer."
*Coverall N. America, Inc.* v. *Commissioner of the Div. of Unemployment As-
sistance*, 447 Mass. 852, 856 (2006) (footnote omitted).

68 Mass. App. Ct. 426 (2007)                                    427

Commissioner of the Division of Unemployment Assistance *v.* Town Taxi of Cape Cod, Inc.

Court that the drivers are independent contractors.

*Procedural background.* A review examiner of the division of unemployment assistance (division) affirmed an initial division determination that taxicab drivers for Town Taxi were employees of Town Taxi within the scope of G. L. c. 151A, § 2. On appeal, the division's board of review (board) remanded the matter to the review examiner for the taking of additional evidence and for further findings.[2] Ultimately, the earlier determination was reversed, and the drivers were held to be independent contractors, Town Taxi having met its burden under the conjunctive three-part test set forth in G. L. c. 151A, § 2, and detailed in *Athol Daily News* v. *Board of Review of the Div. of Employment & Training*, 439 Mass. 171, 175 (2003) (*Athol Daily News*).

The commissioner of the division sought judicial review under G. L. c. 151A, § 42. A judge of the Boston Municipal Court affirmed the decision. After judgment entered and the commissioner's motion for reconsideration was denied, the commissioner appealed.

*Facts.* The review examiner found that Town Taxi, licensed by the town of Barnstable to operate a taxicab service, required each of its more than thirty drivers to obtain a hackney license from the town,[3] had set shifts among which the drivers could choose (but drivers were required to obtain a replacement if unable to work a scheduled shift), and provided taxicabs with full

---

[2]On remand, the review examiner examined, among other things, Town Taxi's computerized dispatch system and its global positioning system (GPS), as well as the provisions of the "Taxicab Lease Agreement" that Town Taxi required all of its drivers to sign. The lease agreement provided, in pertinent part, that "By this agreement the LESSOR and LESSEE acknowledge and agree that there does not exist between them the relationship of employer-employee, principal-agent, or master-servant, either express or implied, but that the relationship of the parties is strictly that of lessor-lessee, the LESSEE being free from interference or control on the part of the LESSOR in the operation of said taxicab. LESSEE agrees that he will comply [with] all applicable federal, state and municipal laws, rules, regulations and ordinances, and that he shall be solely responsible for any fines, penalties, or forfeitures occasioned by an[y] violation thereof. LESSEE acknowledges that: a. He is not eligible for federal or state unemployment benefits."

[3]The hackney license permits the prospective driver to open his own taxi service or drive for any other taxi service in the area.

tanks of gas at the beginning of shifts,[4] automobile insurance for all cabs, business cards, and all maintenance and repairs on the cabs. At the conclusion of all shifts, Town Taxi required the drivers to return the cabs with full tanks of gas and to submit fifty percent of the money received for passenger fares, with the drivers retaining both the remaining fifty percent and all tips. Town Taxi did not prohibit the drivers from engaging in other employment while driving its cabs.[5] Town Taxi used a computerized dispatch system and a global positioning system (GPS) to assist drivers in finding prospective customers,[6] but drivers were not required to pick up these customers and were allowed to pick up customers on their own without such assistance. Town Taxi did not provide workers' compensation insurance nor did it provide drivers with W-2 forms or Internal Revenue Service Form 1099s.

*Discussion.* "We review the decision of the board according to the standards set forth in G. L. c. 30A, § 14(7), giving 'due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.' " *Athol Daily News,* 439 Mass. at 174. "The agency's decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law. G. L. c. 30A, § 14(7)." *Coverall N. America, Inc.* v. *Commissioner of the Div. of Unemployment*

---

[4]Town Taxi allowed drivers to use their own vehicles if the vehicles bore the name of Town Taxi on them; however, no drivers did so.

[5]Some drivers delivered food to the airport for shipment to Martha's Vineyard or Nantucket. In such cases, the drivers were paid a fee for picking up and delivering the food to the airport (not split with Town Taxi), in addition to the taxi fare for the trip (split with Town Taxi). Some drivers engaged in other types of business while driving the cabs, e.g., delivering newspapers, performing collection work, and performing duties as a home health aide.

[6]The review examiner found that "when the company receives a call from a client requesting service, the company's dispatcher enacts the GPS to determine which of their taxicabs is closest to the client's location. The dispatcher then alerts the driver of that cab, through a computer terminal installed in the cab, of the prospective job offer. If the driver chooses to accept the job, the driver presses a button on the computer signifying such. If the driver does not want to accept the job, they simply ignore the offer and after a few minutes, the dispatcher will offer the job to a driver who is the next closest to the client's location."

*Assistance,* 447 Mass. 852, 857 (2006) (*Coverall*).[7] "[W]e are required to construe G. L. c. 151A liberally, in view of its overriding purpose 'to lighten the burden which now falls on the unemployed worker and his family.' G. L. c. 151A, § 74." *Athol Daily News, supra* at 174.

"An employment relationship . . . exists, for purposes of G. L. c. 151A, unless it can be demonstrated that the services at issue are performed (a) free from control or direction of the employing enterprise; (b) outside of the usual course of business, or outside of all the places of business, of the enterprise; and (c) as part of an independently established trade, occupation, profession, or business of the worker." *Athol Daily News,* 439 Mass. at 175. See G. L. c. 151A, § 2.[8] This three-part test is commonly referred to as the "ABC" test; the failure of the employer to demonstrate any of these three foregoing conditions is sufficient to establish that an employer-employee relationship indeed exists. *Athol Daily News, supra* at 175-176.

Based on our review of the record, we conclude that Town Taxi demonstrated to the board, and the board appropriately concluded, that the drivers were not "employees" as provided

[7]"Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' G. L. c. 30A, § 1(6)." *Coverall,* 447 Mass. at 857.

[8]General Laws c. 151A, § 2, as amended by St. 1990, c. 177, § 250, provides that:

"Service performed by an individual, except in such cases as the context of this chapter otherwise requires, shall be deemed to be employment subject to this chapter irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the commissioner that—

"(a) such individual has been and will continue to be free from control and direction in connection with the performance of such services, both under his contract for the performance of service and in fact; and

"(b) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

"(c) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

for in G. L. c. 151A, § 2.[9],[10] We review each part of the ABC test in turn.

*Part (a).* "The first part of the test examines the degree of control and direction retained by the employing entity over the services performed." *Athol Daily News,* 439 Mass. at 176-177. The burden is upon the employer to demonstrate that the services at issue are performed free from its control or direction. "[T]he test is not so narrow as to require that a worker be entirely 'free from direction and control from outside forces.' " *Id.* at 178.

Here, the drivers had the freedom of choosing which shifts to work and were not obligated to respond to calls from Town Taxi regarding a prospective customer in the driver's vicinity. Moreover, the drivers were free to engage in other employment and perform personal business during their shifts using the taxis. See *Athol Daily News, supra.* As such, Town Taxi met its burden under part (a) of the test.

*Part (b).* "The second part of the test involves two separate criteria, and, if the employer demonstrates either, part (b) will be met. The question asked is [1] whether the services are performed outside of the usual course of business of the enterprise or [2] whether the services are performed outside of all the places of business of the enterprise." *Athol Daily News, supra.*

---

[9]The lease agreement executed by Town Taxi and the drivers, see note 2, *supra,* which expressly denied the existence of an employer-employee relationship and stated that the driver is not eligible for unemployment benefits, is not dispositive. See *Boston Bicycle Couriers, Inc.* v. *Deputy Director of the Div. of Employment & Training,* 56 Mass. App. Ct. 473, 483-484 (2002) ("While a contract expressed in terms of engagement on an independent contractor basis may be relevant to a status determination, the existence of such a contract is not controlling"). See also G. L. c. 151A, § 2(*a*) (requiring employer to demonstrate that individual is free from direction and control "both under his contract for the performance of service and in fact").

[10]Although the Boston Municipal Court judge erred in basing his decision, in part, on statutorily impermissible factors — specifically that Town Taxi did not withhold taxes, did not provide drivers with W-2 forms or Form 1099s, and did not provide workers' compensation insurance — such error did not rise to a level meriting reversal. See G. L. c. 151A, § 2, second par., inserted by St. 2004, c. 193, § 28, effective July 19, 2004 ("The failure to withhold federal or state income taxes or to pay workers compensation premiums with respect to an individual's wages shall not be used for the purposes of making a determination under this section").

The board and the judge found that the latter segment of the test was met and we agree. The service performed by the drivers occurred outside the business premises of Town Taxi. Although the taxicabs were stored and the dispatch system was operated at the business premises of Town Taxi, the drivers did not transport customers on those premises. Compare *Athol Daily News*, 439 Mass. at 179 (where carriers picked up newspapers from employer's distribution center and delivered them to individual houses, stores, bundle drops, or vending machines, "all of the carriers ma[d]e deliveries outside of premises owned by the [employer] or which could fairly be deemed its 'places of business' "). Further, drivers were free not only to pick up customers not referred from Town Taxi's computerized dispatch system, but also to refuse to pick up a customer referred to them. Drivers were not confined to a specific geographical location and were free to choose locations where they would look for passengers. These factors considered together support the decision made below. *Ibid.*

*Part (c).* "The third part of the test asks whether the worker is 'customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.' " *Athol Daily News*, 439 Mass. at 179. The main consideration under this section is "whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services." *Id.* at 181. See *Boston Bicycle Couriers, Inc.* v. *Deputy Director of the Div. of Employment & Training*, 56 Mass. App. Ct. 473, 480, 484 (2002) (key is "whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise"; examiner must take into account all relevant facts and circumstances of the working relationship with "[n]o one factor [being] outcome-determinative").

In *Athol Daily News*, 439 Mass. at 181-182, the Supreme Judicial Court found compelling that (1) "the business of delivering newspapers is not limited to a single employer, and

nothing with respect to the carriers' job performance in this case is unique to one certain newspaper publisher"; (2) "the carriers are free to deliver newspapers (or other publications, such as advertising flyers) for anyone who wishes to contract with them, even competitors of the News"; and (3) "the carriers are free to advertise their delivery services, if they so desire, in an attempt [to increase business, which is] . . . compelling evidence that a carrier is an entrepreneur and performs his or her newspaper delivery service for the News in that capacity . . . ."

These considerations are at play in the case at bar. Upon obtaining a hackney license, the drivers could open their own taxi service or drive for another service. They were free to find customers on their own and reject prospective customers referred from the dispatcher. Town Taxi permitted them to engage in other employment or generate their own businesses while using the leased taxi, and many did so. This "entrepreneurial" spirit, exhibited by a typical independent contractor, was, as in *Athol Daily News*, 439 Mass. at 182, contemplated by part (c) of the test. Compare and contrast *Coverall*, 447 Mass. at 858-859 ("[T]he claimant only cleaned at the locations Coverall provided and was provided with a plan of action and directed to follow it by Coverall supervisors. . . . [T]he claimant was required to allow Coverall to negotiate contracts and pricing directly with clients, bill clients, and provide a daily cleaning plan to which the claimant was required to adhere. . . . [T]he claimant was compelled to rely heavily on Coverall"); *Boston Bicycle Couriers, Inc.* v. *Deputy Director of the Div. of Employment & Training*, 56 Mass. App. Ct. at 482 ("[employer] did not make an adequate showing that [worker] held himself out as an independent businessman performing courier services for any community of potential customers").

*Judgment affirmed.*

*Order denying motion for reconsideration affirmed.*