PEAR EADY'S CASE.

No. 07-P-1610.

Suffolk. June 16, 2008. - September 29, 2008.

Present: KAFKER, VUONO, & GRAINGER, JJ.

*Workers' Compensation Act,* Amount of compensation, Judicial review.

This court concluded that a finding of an administrative judge of the Department of Industrial Accidents, which assigned a certain weekly earning capacity to a partially disabled employee, was arbitrary within the meaning of G. L. c. 30A, § 14(7)(*g*), where the judge's decision contained no explanation whatsoever for the weekly earning capacity figure. [725-728]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*John F. Moran* for the employee.

*Mark H. Likoff* for the insurer.

GRAINGER, J. The employee, Pear Eady, appeals from a decision of the reviewing board of the Department of Industrial Accidents (board). The board summarily affirmed a decision of an administrative judge, who found Eady to be partially disabled and awarded him weekly benefits under G. L. c. 152, §§ 13, 30, and 35. Pursuant to G. L. c. 30A, § 14(7)(*f*)-(*g*),[1] Eady argues that the administrative judge's assignment of a $975 weekly earning capacity was unwarranted by the facts, arbitrary or capricious, and an abuse of discretion.

*Background.* At the time of the administrative hearing, Eady was forty-nine years old. He is a high school graduate and has been employed as union ironworker his entire adult life. Before his injury, he had been working at Keystone Engineering Cor-

---

[1]Eady also mistakenly relies upon G. L. c. 30A, § 14(7)(*e*), as amended by St. 1973, c. 1114, § 3, which allows reversal of administrative decisions that are "[u]nsupported by substantial evidence." Section 14(7)(*e*) does not apply to appeals from decisions of the board. See G. L. c. 152, § 12(2).

poration (Keystone) as an ironworker welder. His position required him to work in awkward positions on beams, ladders, and scaffolding, stand for prolonged periods, bend repetitively, and stoop and lift up to one hundred pounds.

While working at Keystone, Eady injured his back. The insurer voluntarily began payment of temporary total disability benefits under G. L. c. 152, § 34, but then filed an application to discontinue or modify those benefits. After conciliation and conference, an administrative judge ordered discontinuation of the § 34 benefits, and ordered the insurer to pay partial disability benefits under G. L. c. 152, § 35, based upon an earning capacity of $975 per week. Both parties appealed, and a de novo hearing was held before the same administrative judge. Eady was the only witness to testify. The administrative judge also considered the deposition of Dr. Nabil Basta (the impartial examiner) and Eady's medical records, including medical reports by Dr. John Doherty and Dr. James Sarni.

The administrative judge found Eady to be partially disabled. He adopted the medical opinions of Doherty and Sarni, both of whom opined that Eady was disabled from returning to work as an ironworker, and would be unable to perform work that required him to repeatedly bend, twist, or lift more than fifteen or twenty pounds on a regular basis. However, the administrative judge refused to credit Eady's testimony as to the extent of his back pain and inability to perform any work, finding that Eady had general knowledge of construction, was able to operate a motor vehicle, and was able to perform tasks with his hands. The administrative judge then concluded, "[C]onsidering the employee's age, education, transferable skills, work experience, his physical restrictions and the totality of the medical evidence, . . . the employee is capable of light duty employment. I find that Mr. Eady is partially disabled and has an earning capacity of $975." The board summarily affirmed.

*Discussion.* Eady argues that the administrative judge's assignment of an earning capacity of $975 per week was unwarranted by the facts, arbitrary or capricious, and an abuse of discretion. See G. L. c. 30A, § 14(7)(*f*)-(*g*).[2] Because the board

---

[2]There is no appeal from the administrative judge's determination of partial disability.

summarily affirmed, we review the findings and conclusions of the administrative judge. See *Dalbec's Case*, 69 Mass. App. Ct. 306, 313 (2007).

Where, as here, neither party submitted any vocational evidence, the administrative judge could rely upon his "own judgment and knowledge" in calculating earning capacity. See, e.g., *Mulcahey's Case*, 26 Mass. App. Ct. 1, 3 (1988). However, as we recently made clear with *Dalbec's Case, supra* at 317, "[a] monetary figure cannot emerge from thin air and survive judicial review as a mystery." The decision maker must therefore support the earning capacity he assigns by explaining its "source and application," including a "factual source" for the monetary figure. See *id.* at 316, 317. A decision that does not contain such a factual source, along with a reasoned explanation, is "arbitrary within the meaning of G. L. c. 30A, § 14(7)(*g*)." *Id.* at 316. See G. L. c. 30A, § 11(8) (requiring statement of reasons including determination of facts).

The need for a reasoned explanation that refers to a factual source is clear from the Administrative Procedure Act (Act), G. L. c. 30A, which requires that "[e]very agency decision shall be . . . accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision," in the absence of a statutory exception. G. L. c. 30A, § 11(8), inserted by St. 1954, c. 681, § 1. The Act also requires that administrative decisions not be "[a]rbitrary or capricious." G. L. c. 30A, § 14(7)(*g*), as amended by St. 1973, c. 1114, § 3. Further, as the Supreme Judicial Court has long held, subsidiary findings must be sufficiently specific and detailed as to "adequate[ly] reveal the basis for the [decision maker's] ultimate finding." *McElroy's Case*, 397 Mass. 743, 746 (1986). The reason for the assignment of earning capacity must be clear from the factual findings and the decision maker's explanation. See *Scheffler's Case*, 419 Mass. 251, 258 (1994) (reviewing court is to determine "whether the decision is factually warranted and not '[a]rbitrary or capricious,' in the sense of having adequate evidentiary and factual support and disclosing reasoned decision making within the particular requirements governing a workers' compensation dispute"). The factual source requirement "reflects the fundamental requirement of rationality for every administrative decision." *Dalbec's Case, supra* at 313 n.8.

From the case law, we discern three elements, or subsidiary findings, that support an assignment of earning capacity: (1) the employee's medical limitations, see *Trant's Case*, 21 Mass. App. Ct. 983, 984-985 (1986), (2) the employee's employment capabilities, including age, education, work experience, and transferable skills, see *Ballard's Case*, 13 Mass. App. Ct. 1068, 1068-1069 (1982), and (3) the market for the employee's skills. See *Dalbec's Case*, *supra* at 316-317, 318 n.14. See also *Sylva's Case*, 46 Mass. App. Ct. 679, 681 (1999) (referring to the third element as the "economic element"). We note that the third element does not necessarily require the decision maker to identify "particular jobs which were within [the employee's] limited ability to perform and which were in fact available." *Mulcahey's Case*, *supra*.

The administrative judge's decision refers to Eady's medical limitations and personal capabilities, but is wholly silent with respect to the third element, namely what Eady might reasonably command as a salary in the marketplace. Consequently the determination of earning capacity in this case appears to present even more of a "mystery" than that in *Dalbec's Case*. There, the administrative judge determined that the employee could still drive a tractor trailer after his injury, and opined without further basis that such driving-only positions paid $900 per week. *Dalbec's Case*, 69 Mass. App. Ct. at 316. However, because neither the *Dalbec* decision nor the administrative record contained any "factual source or reasoned explanation for the $900 figure," we remanded for a "reasoned computation" of earning capacity. *Id.* at 316, 318.

Here, the administrative judge found that Eady was capable of "light duty employment" and, without explanation, simply assigned an earning capacity of $975 per week. As in *Dalbec's Case*, the administrative judge referred to no factual source for the $975 figure, nor does the administrative record contain any such source. Although the decision maker has substantial discretion to exercise his own judgment and knowledge in determining earning capacity, we cannot approve of a decision that, as in *Dalbec's Case*, contains "no explanation whatsoever" for the earning capacity figure. See *id.* at 317. Because the finding of a $975 weekly earning capacity is not grounded in specific sub-

sidiary findings sufficient to enable us to discern any basis, it is purely arbitrary. See G. L. c. 30A, § 14(7)(g); *Dalbec's Case*, 69 Mass. App. Ct. at 316. See also *McElroy's Case, supra.* Keystone characterizes as sufficient the findings on Eady's medical limitations and employment capabilities; as stated above such findings are necessary, but they are insufficient unless accompanied by a factual source for the monetary figure determined to be available in the job market for an individual with those characteristics. See *Dalbec's Case*, 69 Mass. App. Ct. at 316. Finally, the administrative judge's reference to "light duty employment" without any explanation of what such a position would entail makes his assignment of a $975 per week earning capacity even more difficult to parse.

For these reasons, we vacate the amount of the partial disability award and remand for a reasoned computation of that amount consistent with this opinion, including a reference to the factual source(s) for the monetary figure. On remand, the "information already present in the case file, or reliable publications of labor statistics, or additional evidence" may be consulted.[3] *Id.* at 318 n.14. In all other respects, the decision is affirmed.

*So ordered.*

---

[3]In *Dalbec's Case*, 69 Mass. App. Ct. at 317 n.11, we also noted approval of such sources as a comparison between the pre- and post-injury cost to the employer for the employee to perform specific tasks, see *Percival's Case*, 268 Mass. 50, 54 (1929); the employee's minimal capacity for work at the lower end of the wage scale, see *Mulcahey's Case*, 26 Mass. App. Ct. at 3; and the testimony of the employee's vocational expert, see *Sylva's Case, supra.*