NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-269                                          Appeals Court


SUBCONTRACTING CONCEPTS, INC.  vs.  COMMISSIONER OF THE DIVISION
              OF UNEMPLOYMENT ASSISTANCE & another.[1]


No. 13-P-269.

Middlesex.     October 8, 2013. - November 12, 2014.

Present:  Rubin, Milkey, & Agnes, JJ.


Employment Security, Employment relationship, Burden of proof.


Civil action commenced in the Ayer Division of the District Court Department on August 23, 2011.

The case was heard by Michael J. Brooks, J.


Jack K. Merrill for the plaintiff.
Suleyken D. Walker, Assistant Attorney General, for Commissioner of Unemployment Assistance.


AGNES, J.  This case concerns the liability of the

plaintiff, Subcontracting Concepts, Inc. (SCI), a New York

corporation, for contributions to the Massachusetts unemployment

compensation fund (fund) pursuant to G. L. c. 151A, §§ 13 & 14.

The Division of Unemployment Assistance (DUA) determined that

_____

[1] Kenneth Flynn.

the defendant Kenneth Flynn was an "employee," who performed "employment" services for SCI, who was his "employer."  SCI contends that Flynn was an independent contractor (and not an employee) under a statutory exemption set forth in G. L. c. 151A, § 2.  For the reasons that follow, we conclude that the board of review (board) of the DUA ruled correctly that Flynn was an employee who performed services for SCI, and thus we affirm the judgment of the District Court which reached the same result.

1.  <u>Procedural background</u>.[2]  This appeal arose out of a claim for unemployment compensation filed by Flynn in September, 2009.  Flynn worked from April 4, 2009, to August 12, 2009, when he was terminated.  Flynn named Ace Expediters of Alabama, Inc. (Ace), as his employer.  Flynn did not work for anyone else during this period.[3]

---

[2] The DUA concedes that two of the review examiner's findings are clearly erroneous.  Those facts are not relied upon in reaching this decision.  The rest of the review examiner's findings are supported by substantial evidence in the record.

[3] Thereafter, the DUA determined that Flynn was an employee and that SCI was his employer.  Thus, the DUA concluded that SCI was required to pay into the fund.  See G. L. c. 151A, §§ 13 & 14.  On or about November 12, 2009, SCI appealed this determination and requested a hearing.  A review examiner appointed by DUA conducted a hearing on April 5, 2011.  On May 12, 2011, the examiner issued a written decision determining that an employer-employee relationship existed between SCI and Flynn and that SCI was liable for payments to the fund.  On or about July 13, 2011, SCI petitioned the board for review of the examiner's decision.  The board issued its decision on July 25,

2.  Factual background.  The examiner made the following findings of fact which are amply supported by the evidence presented at the hearing.  On March 21, 2009, Flynn entered into a written contract with SCI to provide services to "SCI and its customers."[4]

The examiner found that SCI "is engaged in providing drivers and vehicles to client courier services to perform their necessary delivery work.  They also provide a payroll service, paying the drivers, who are always hired as independent contractors."  Flynn did not sign a contract with SCI's courier client for whom he made the deliveries, in this case Ace.  Flynn's agreement with SCI states that "no employer/employee relationship is created under this agreement or otherwise."  No taxes were deducted from Flynn's pay and he received no benefits from SCI.  Flynn was paid a set daily fee of $139.00 for his services.  He could not negotiate his own fees with the client, Ace, and was required to follow the delivery schedule set by the

2011, and affirmed the examiner's determination.  SCI filed a complaint for judicial review in the Ayer District Court on August 23, 2011.  The judge ruled that the board "had a reasonable basis and was not arbitrary and capricious." Judgment entered for the defendants.

Because both the District Court and the board summarily affirmed the written decision by the examiner, that decision is what we review in this case.  See Eady's Case, 72 Mass. App. Ct. 724, 725-726 (2008).

[4] The contract was received as an exhibit at the hearing and is part of the record on appeal.

client.  Flynn was required to wear a shirt with the Ace logo on it when he performed services for the client.

Under the contract, Flynn agreed to make his vehicle available to SCI and to use his vehicle in connection with the services Flynn furnished to SCI and Ace.  Flynn's agreement with SCI also obligated him "not to have any 'non-essential' personnel on board his or her vehicle while the vehicle is on the premises of any SCI courier client or while [o]wner/[o]perator's vehicle contained any freight packages or envelopes."  Flynn also was required to report any accidents to SCI, and SCI agreed to provide insurance benefits to their independent contractors such as Flynn.

3.  Discussion.  a.  Standard of review.  We review the decision of the board according to the standards set forth in G. L. c. 30A, § 14(7).  G. L. c. 151A, § 42.  The validity of an agency decision depends on whether it is supported by substantial evidence.  Coverall N. America, Inc. v. Commissioner of the Div. of Unemployment Assistance, 447 Mass. 852, 857 (2006) (Coverall).[5]

---

[5] We respect "the experience, technical competence, and specialized knowledge of the agency, as well as . . . the discretionary authority conferred upon it."  Athol Daily News v. Board of Review of the Div. of Employment & Training, 439 Mass. 171, 174 (2003).  The board's decision will be affirmed unless it is "unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law."  Commissioner of the Div. of Unemployment Assistance v.

b. <u>SCI was obligated to contribute to the Unemployment Compensation Fund</u>. i. <u>SCI was an "employing unit</u>." An "employing unit" is defined as "any individual or type of organization . . . who or which has or . . . had one or more individuals performing services for him or it within this [C]ommonwealth." G. L. c. 151A, § 1(<u>j</u>). The statute also defines "employment" as any "service . . . performed for wages or under any contract, oral or written, express or implied, by an employee for his employer . . . ." G. L. c. 151A, § 1(<u>k</u>). See <u>Work-A-Day of Fitchburg, Inc</u>. v. <u>Commissioner of the Dept. of Employment & Training</u>, 412 Mass. 578, 581 n. 3 (1992).

SCI contends that the board erred in making the threshold determination that it was an "employing unit" subject to the requirements of the unemployment compensation statute because Flynn never performed services for it. SCI's contention that it was not an "employing unit" is belied by the plain terms of the contract and the findings made by the examiner. The contract states that Flynn was to provide services to "SCI and its customers." Flynn, in fact, provided services for SCI by delivering goods for SCI's clients, such as Ace, which hired SCI to supply it with delivery drivers.

---

<u>Town Taxi of Cape Cod, Inc</u>., 68 Mass. App. Ct. 426, 428-429 (2007).

ii.  <u>SCI did not meet its burden to demonstrate that Flynn was an independent contractor</u>.  An employer's liability to contribute to the fund depends on whether there is an employment relationship between the employing unit and the person who performs services for it.  An "[e]mployee" is defined by G. L. c. 151A, § 1 (<u>h</u>), as "any individual employed by any employer subject to this chapter and in employment subject thereto."  The statute creates a rebuttable presumption that an individual performing services to an employing unit is an employee.  SCI argues that Flynn and those similarly situated were not employees, but instead should be regarded as independent contractors.

"The term 'employment' under the [statute] is inclusive, and the [statute] is of broad reach."  <u>Boston Bicycle Couriers, Inc</u>. v. <u>Deputy Director of the Div. of Employment and Training</u>, 56 Mass. App. Ct. 473, 476 (2002) (<u>Boston Bicycle Couriers</u>).  Under the statute, the burden rests on SCI, as an "employing unit" to overcome the statutory presumption and to establish that Flynn, the individual who performed services for it, falls within the statutory exemption.  Whether the presumption is overcome is governed by what has come to be known as the tripartite "ABC" test.  Under this test, SCI must prove that Flynn performed services (a) "free from control or direction" of the employing enterprise; (b) "outside of the usual course of

business," or "outside of all the places of business, of the enterprise;" and (c) as part of "an independently established trade, occupation, profession, or business" of the worker. G. L. c. 151A, § 2. In order to meet its burden of proof, SCI must demonstrate that each one of the three statutory criteria is applicable to the services performed by Flynn. Otherwise, the services in question will be deemed "employment" within the meaning of G. L. c. 151A and SCI is liable to contribute to the fund. If SCI meets its burden of proof, and demonstrates that the services do not constitute employment, Flynn and others similarly situated will be regarded as independent contractors and not "employees" within the meaning of G. L. c. 151A. See Coverall, supra at 856-857. The board was warranted in concluding that SCI did not meet its burden of proof with respect to part (a) of the tripartite test because it failed to demonstrate that the services at issue are performed "free from control or direction" of the employing enterprise. G. L. c. 151A, § 2(a).

In Athol Daily News v. Board of Review of the Div. of Employment and Training, 439 Mass. 171, 175 (2003) (Athol Daily News), the Supreme Judicial Court explained that, in assessing whether the employing unit has met its burden of proof on part (a) of the tripartite test, there are two critical questions: did the person performing services (1) have the right to control

the details of how the services were performed;[6] and (2) have the freedom from supervision "not only as to the result to be accomplished but also as to the means and methods that are to be utilized in the performance of the work."  Id. at 177, quoting from Maniscalco v. Director of the Div. of Employment Sec., 327 Mass. 211, 212 (1951).

Under the contract at issue, SCI required Flynn to submit to the control or direction of Ace, SCI's client. Flynn had a contractual obligation to SCI to perform his work through whatever means or methods Ace required.  SCI required that Flynn check with Ace prior to working for any other carrier, follow Ace's delivery routes and wear a t-shirt bearing the Ace logo, and ensure that anyone working with Flynn met SCI's requirements.  SCI controlled how Flynn maintained the vehicle he used for deliveries and who he allowed in his vehicle while servicing SCI's customers.  While Flynn had some choice as to the manner in which he performed his deliveries, SCI had authority to exercise a substantial degree of control over numerous details of the performance.  See Driscoll v. Worcester Telegram & Gazette, 72 Mass. App. Ct. 709, 715-716 (2008).  SCI

---

[6] However, "the test is not so narrow as to require that a worker be entirely free from direction and control from outside forces."  Athol Daily News, supra at 176-178 (quotation omitted).

did not meet its burden of showing that Flynn was free from control, direction, and supervision of the employing enterprise.

SCI also failed to meet its burden with respect to part (c) of the tripartite test. That burden is not met "unless it can be demonstrated that the services at issue are performed . . . as part of an independently established trade, occupation, profession, or business of the worker." Athol Daily News, supra at 175. The critical question here is "whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services." Id. at 181. "[T]he question whether an employer has satisfied the statutory requirements of the third prong of [the independent contractor test] must be based upon a comprehensive analysis of the totality of relevant facts and circumstances of the working relationship. No one factor is outcome-determinative." Boston Bicycle Couriers, supra at 484. Thus, the fact that Flynn signed an agreement that identified him as an independent contractor is not determinative.[7] See id.

---

[7] The observation we made in Boston Bicycle Couriers is instructive: "the Legislature, presumably aware of the possibility of artful contract drafting, included language in § 2 that requires the employer to prove the absence of control

at 480 (key consideration is "whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise").  Essentially, part (c) requires the employing unit to demonstrate that the worker is performing services as "an entrepreneur."  Ibid.

In this case, Flynn, like the bicycle carriers in Boston Bicycle Couriers, supra, depended on a single employer for the continuation of the services he performed while not wearing the hat of his own independent enterprise.  Flynn worked five days a week for Ace between 9 P.M. and 6 A.M., with little time to engage in any independent enterprise.  Flynn worked for no one else during the period he was employed by SCI.  Flynn was required to obtain approval prior to performing work for any other clients, thus placing limits on his ability to work for anyone wishing to avail themselves of his services. See Coverall, supra at 859 ("[T]he claimant was compelled to rely heavily on Coverall").  Compare Athol Daily News, supra at 181-182 (carriers were free to deliver newspapers for multiple

_____

and direction over the worker 'both under his contract for the performance of service and in fact' [emphasis original].  This statutory language directs [the Department of Employment and Training] and a reviewing court to look beyond the four corners of the agreement to the actual working relationship [footnote omitted].  So viewed, boilerplate language replete with designations and labels incorporated into form contracts by the employing unit may not be used as a subterfuge to avoid liability to the unemployment compensation fund when the agreement lacks any real foundation in the facts of the actual working relationship."  Id. at 484.

publishers, including competitors of the defendant publisher, and the record in that case indicates that some carriers exercised that option); Commissioner of the Div. of Unemployment Assistance v. Town Taxi of Cape Cod, Inc., 68 Mass. App. Ct. 426, 432 (2007) (court noted that the drivers could operate their own taxi service or drive for another service at the same time they operated leased taxi cabs).

4. Conclusion. For the foregoing reasons, we conclude that the review examiner's determination that the claimant was not an independent contractor within the meaning of G. L. c. 151A, § 2, but instead an employee who was controlled by SCI is neither arbitrary nor capricious, and is supported by substantial evidence. Accordingly, we affirm the judge's decision.

Judgment affirmed.